## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

PINKIE MAPHUTHA,            :
                               :
        Plaintiff,          :
                               :    Civil Action No.:  3:19-cv-01411
    v.                   :    (VLB)
                               :
DILIGENT ENTERPRISE, INC. D/B/A :
COMFORCARE HOME CARE and    :
DEVON G. WILLIAMS,        :
                               :
        Defendants.      :
                               :    October 23, 2020

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

The undisputed facts reveal that Defendants did not "willfully" violate the FLSA. Moreover, the undisputed facts reveal that Plaintiff never reported any deprivation of her meal breaks or interruptions of her sleep time in the time sheets she completed, signed and submitted to the Defendants every week. Thus, Defendants Diligent Enterprise, Inc. d/b/a Comforcare Home Care ("Diligent") and Devon G. Williams ("Williams") (collectively "Defendants") hereby respectfully move for partial summary judgment with respect to all four counts of the complaint filed by plaintiff Pinkie Maphutha.

Counts One and Three in Plaintiff's complaint alleges violation of the Fair Labor Standards Act ("FLSA").  These claims are ripe for summary judgment in two ways:  (1) with respect to the claim that Defendants failed to pay plaintiff overtime for working twenty-four hours a day seven days per week; and (2) to the extent it alleges that Defendants knew or had reckless disregard for whether their

conduct violated the provisions of §§ 207, 211 and 215(a)(2) of the FLSA.  There are no issues of fact that prevent summary judgment on these claims.

Counts Two and Four of Plaintiff's complaint alleging a violation of the Connecticut Minimum Wage Act ("CMWA") are also ripe for summary judgment in two respects:  (1) with respect to the claim that Defendants failed to pay plaintiff overtime for working twenty-four hours a day seven days per week; and (2) to the extent it claims that Defendants lacked a good faith belief that any underpayment of wages was in compliance with the wage laws. Again, there are no issues of fact that prevent summary judgment on these claims.

First, plaintiff has failed to produce—because she cannot—any evidence to show that she did not receive at least five hours of uninterrupted sleep on any night, let alone every night.  To the contrary, she completed, signed and submitted sleep logs and timesheets showing that she received *eight full hours* of sleep *every single night*.  Moreover, plaintiff admitted that she did not ever complain to anyone at Diligent about her alleged inability to sleep and/or take breaks.

Second, Plaintiff has failed to provide any factual basis to support her claims that Defendants acted knowingly or with reckless disregard to whether they were violating the FLSA.  To begin with, every hourly log that Plaintiff submitted to Defendants stated that she was receiving a full eight hours of sleep per night.  Further, Plaintiff admitted that she did not ever inform Defendants that she was allegedly not getting her full eight hours of sleep and/or her rest breaks. In view of this undisputed record, Defendants paid Plaintiff for all hours she

claimed to have been working.  Any failure by Defendants to pay Plaintiff for interruptions to her sleep time, if any, was not the result of any willful or reckless act.  Rather, it was the result of Defendants relying on records Plaintiff, herself, submitted.

Finally, Defendants have made clear their good faith efforts to comply with the FLSA and state wage payment laws.  Defendant Williams testified that he personally reached out to the Department of Labor ("DOL" or "the Department") on multiple occasions to seek guidance on how to properly pay live-in aides. Not only did Defendants have discussions with the former Director of the Connecticut DOL, but, upon his departure from the Department, Defendants continued to have discussions with a Wage and Hour Investigator at the DOL.  The undisputed record makes plain that Defendants did their due diligence and made a documented good faith effort to comply with the applicable wage laws with assistance and input from the DOL.

Therefore, in view of the absence of any evidence of any knowledge of violating the wage laws or reckless disregard with respect to the same on behalf of Defendants, judgment should be entered in favor of the Defendants with regard to Plaintiff's claim that they knew or had reckless disregard for whether their conduct violated the provisions of §§ 207, 211 and 215(a)(2) of the FLSA and/or that they lacked a good faith belief that any underpayment of wages was in compliance with the CMWA. Issuance of summary judgment on this issue will reduce the applicable statute of limitations from three years to two years and will render liquidated damages unavailable.

3

Further, based on the fact that plaintiff has failed to proffer any evidence whatsoever of her alleged inability to obtain at least five hours of uninterrupted sleep throughout every night she was employed—or even during *a single night*—plaintiff cannot prove that Defendants violated the FLSA or the CMWA in failing to pay her additional overtime for hours she expressly reported she did not work. Thus, Defendants are entitled to summary judgment on these issues.

## I.      FACTUAL AND PROCEDURAL HISTORY

Plaintiff was hired by Diligent as a 24-hour Live-In Aide ("Live-In") on September 1, 2016, and was assigned to work as a live-in aide for Jacqueline Smith Coughlin.  Defendants' Local Rule 56(a)(1) Statement ("Facts"), ¶ 1.  Before Plaintiff began her assignment with Ms. Coughlin, she executed a Live-In Aide Agreement with Defendant Diligent in which she agreed to, *inter alia*, certain terms of his employment with regard to sleeping and taking breaks.  Facts, ¶ 2. Specifically, the agreement provided in relevant part:

> If the employee is required to be on duty for 24 hours or more, a regularly scheduled sleeping period of no more than 8 hours will be excluded from hours worked provided adequate sleeping facilities are provided and the employee can usually have an uninterrupted night's sleep. If you are not able to get 8 hours [sic] sleep each day you'll be removed and different personnel will be tried or the case will be converted to hourly or transferred back to the appropriate authorities and deemed live in inappropriate . . . If the sleeping period is interrupted by a need to provide services for the client, the period of the interruption will count as hours worked. If the period of interruption is such that the employee cannot get at least 5 hours of uninterrupted sleep during the scheduled sleep period, the entire time will be treated as hours worked.

> You are also required to take 3 one hour break[s] for each meal (breakfast, lunch, dinner).  Between those breaks you must also take 2 (1/2) hour breaks.

*Id.*, ¶ 3.  The Live-In Agreement also provided, in bold font, "[m]eal provision is the full responsibility of the client on a daily basis." *Id.*, ¶ 4. Plaintiff admits that she reviewed the contents of the Live-In Aide Agreement prior to signing it on September 21, 2016. *Id.*, ¶ 5.

Further, Plaintiff received instructions from Defendant on how to properly fill out the Timesheets when she began her assignment with Ms. Coughlin.  Facts, ¶ 6.  Plaintiff also testified that Defendant gave her the timesheet form,told her that she had to fill it out every day, and that she either mailed it into Diligent or someone from Diligent picked it up from her.  *Id.*, ¶ 7.[1]

Consistent with the training and Live-In Agreement, Plaintiff filled out Defendant's Home Care Services PCA Timesheets ("Timesheets") each week during her assignment with Ms. Coughlin. Facts, ¶ 9.  In addition to the timesheets, Plaintiff filled out Defendant's Live-In Services Hourly Log ("Hourly Log") each week during her assignment with Ms. Coughlin. *Id.*, ¶ 10.

Defendant's Hourly Log form contains columns wherein Plaintiff recorded time spent doing the following activities for/with Ms. Coughlin: general household work, sleeping, taking breaks, and remaining time.  *Id.*, ¶ 11.  The Hourly Log form suggests that the time recorded for general household work "*should* be kept" to approximately 1.5 hours per day; the time recorded for sleeping "*should* be" 8 hours, but "no less than" 5 hours; the time for break time "must be at least 30 minutes of uninterrupted time" to be considered a break; and, when added to the

---

[1] **Plaintiff testified that there was a period of time in February and March 2017 during which she remained in Ms. Coughlin's house while Ms. Coughlin was in the hospital.  Facts, ¶ 8.**

remaining time spent with the client, all columns "*should*" add up to 24 hours. *Id.*, ¶12.  Plaintiff was responsible for accurately filling out the Hourly Log.  Facts, ¶ 13.

On each and every Hourly Log Plaintiff submitted to Defendants during her assignment with Ms. Coughlin, she represented that she was spending 8 hours of each 24-hour period sleeping. *Id.*, ¶ 14.  Plaintiff never submitted an Hourly Log during her assignment with Ms. Coughlin that stated that she was not getting a full 8 hours of sleep per night. *Id.*, ¶ 15.

Plaintiff, as caretaker, was responsible for alerting the Defendants if she had interruptions of her rest/sleep time. *Id.*, ¶ 16.  Plaintiff admitted multiple times that she did not report to anyone at Diligent that she was not getting her full eight hours of sleep.  *Id.*, ¶ 17.  For instance, she testified as follows:

> Q:   Between September of 2016, when you start[ed] with Ms.
>       Coughlin until you got sick, you did not call the office about
>       the lack of sleep?
>
> A:   No.

*Id.* Further, Plaintiff testified that, although she reported issues sleeping to Ms. Coughlin's daughter, Carol, that she did not expect Carol to tell Mr. Williams about the issues.  *Id.*, ¶ 18.

The rate of pay for Plaintiff was set by Defendant Diligent in accordance with joint guidance from the Department of Social Services ("DSS") and the DOL. Facts., ¶ 19.  Defendant Diligent made deductions for food and lodging provided to Plaintiff according to joint guidance from DSS and the DOL. *Id.*, ¶ 20.  In an effort to comply with state and federal wage and hour laws as they relate to live-in

aides, Defendant Williams personally reached out to the DOL for assistance. Facts, ¶ 21.

At first, Defendant Williams reached out to the former Director of the Connecticut Department of Labor, Gary Pechie, for guidance regarding requiring that the live-in aides get eight hours of sleep, plus one hour for each of their three daily meals.  Facts, ¶ 21*.*  Defendant Williams further informed Mr. Pechie that his staff would be told that, if necessary due to their violation of the rules or due to an event beyond their control, the client would be staffed differently.  *Id.*  Mr. Pechie told Defendant Williams that he felt this was a reasonable approach.  *Id.* After Mr. Pechie left the DOL, Defendant Williams continued to speak with an investigator from the Wage and Hour Division of the DOL, Kristi Kenefick. *Id.* Defendant Williams reached out to the DOL in an effort to "make sure [they were] doing the right thing" with regard to paying their live-in aides. *Id.,* ¶ 22.

In response to Defendants' inquiry with the DOL regarding proper pay for live-in aides, Ms. Kenefick provided Defendant Williams with a copy of Field Assistance Bulletin No. 2015-1: Credit towards Wages under Section 3(m) of the FLSA for Lodging Provided to Employees. *Id.,* ¶ 23.  Further, Defendant Williams reached out to the DOL to ask what version of a timesheet he should have Defendant Diligent's live-ins use.  *Id.,* ¶ 24.  Defendant Williams even sent them various samples of timesheets and logs he considered using and finally settled on the version he currently uses based on feedback from Ms. Kenefick, who recommended using that particular hour log, as she felt other versions proposed

by Defendant Williams were "too busy" and might cause confusion among the live-ins. *Id.*

Plaintiff was paid consistent with this guidance and the records submitted by the Plaintiff. Critically:

> Plaintiff received overtime pay, <u>*without deductions*</u>,
>
> in <u>every</u> pay period during her assignment with Ms. Coughlin.

Id., ¶ 25.

Despite claiming she did not understand how her pay was being calculated, Plaintiff admitted she never asked anyone from the Defendants' office to explain her paystubs to her. Id., ¶ 26. Instead, years after the fact, Plaintiff filed a Complaint in Superior Court on August 29, 2019, which was removed to Federal District Court on September 10, 2019.

In this Complaint, plaintiff has alleged four counts:  (1) Violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") as to Diligent; (2) Violation of the Connecticut Minimum Wage Act, General Statutes § 31-58 *et seq.* ("CMWA") as to Diligent; (3) Violation of the FLSA as to Defendant Williams; and (4) Violation of the CMWA as to Defendant Williams.[2]

Plaintiff claims that Defendants violated sections 207, 211 and 215(a)(2) of the FLSA by:  (1) failing to pay plaintiff overtime; (2) failing to keep proper records regarding the cost of furnishing lodging and food, as well as regarding employees' daily start and stop times; and (3) taking improper deductions from

---

[2] Defendants do not concede that Defendant Williams is an "employer," as defined in either the FLSA or the CMWA, and reserve the right to make that argument subsequently.

plaintiff's paycheck for food and lodging.  In addition, Plaintiff claims that Defendants violated the CMWA by failing to pay Plaintiff overtime compensation in violation of General Statutes § 31-76c.  Further, Plaintiff claims that, because of Defendants' alleged unreasonable, arbitrary or bad faith refusal to pay, Plaintiff is entitled to twice the full amount of the wages he was not paid pursuant to General Statutes § 31-72.

## II.    LEGAL STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The Court "must determine whether there is a genuine factual issue for trial, which requires that the party opposing summary judgment must do more than simply show that there is some metaphysical doubt as to the material facts." (Internal quotation marks omitted.)  *Clorox Co. v. Sterling Winthrop, Inc.*, 117 F.3d 50, 55 (2d Cir. 1997).  "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  (Internal quotation marks omitted.)  *Dixon v. Metropolitan District Commission*, 2017 WL 4247051 at *4 (D. Conn. Sept. 25, 2017) (*Bolden, J.*).  Even if the parties dispute

9

certain material facts, summary judgment will be granted "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." (Internal quotation marks omitted.) *Golden Pacific Bancorp. v. F.D.I.C.*, 375 F.3d 196, 200 (2d Cir. 2004). Indeed, "[i]f the nonmoving party submits evidence which is 'merely colorable,' legally sufficient opposition to the motion for summary judgment is not met." *Dervishi ex rel. T.D.* v. *Stamford Board of Ed.*, 2015 WL 4647900 at *2 (Aug. 5, 2015) (*Eginton, J.*). "The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *Golden Pacific Bancorp,* 375 F. 3d at 200.

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy [its] burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claims." *Vann v. City of New York*, 72 F.3d 1040, 1048 (2d Cir. 1995). "A defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996). Plaintiff cannot bear his burden of proof on the issues raised in this motion, so summary judgment should be granted.

III.    ARGUMENT

    A.    *Plaintiff cannot prove that she was due additional overtime compensation, as she has failed to produce any evidence, beyond her own self-serving statements, to show that she did not obtain at least five hours of uninterrupted sleep <u>every single night</u> she worked for Defendants.*

Plaintiff claims that she is due additional overtime compensation because she did not obtain at least five hours of uninterrupted sleep per night during *every single night* that she worked for Defendants caring for Ms. Coughlin.  In support of this contention, she offers nothing but her own self-serving deposition testimony claiming that she did not obtain uninterrupted sleep.  This is not enough.

Indeed, Plaintiff testified that she did not report to anyone at Diligent that she was not getting her full eight hours of sleep.  Facts, ¶ 17.  For instance, she testified as follows:

> Q:     Between September of 2016, when you start[ed] with Ms. Coughlin until you got sick, you did not call the office about the lack of sleep?
>
> A:     No.

*Id.*  Further, Plaintiff testified that, although she reported issues with sleeping to Ms. Coughlin's daughter, Carol, that she did not expect Carol to tell Mr. Williams about the issues.  *Id.*, ¶ 18.

Crucially, Plaintiff admitted that she prepared, signed and submitted to Defendants timesheets and hourly logs every week. There is no dispute that the records Plaintiff prepared, signed and submitted state that she obtained eight hours of sleep during *every* night she cared for Ms. Coughlin.  There is also no dispute that Defendants determined Plaintiff's compensation based on these detailed records submitted by plaintiff. Summary judgement should be granted on Plaintiff's claims for hours she now claims she worked but never before reported.

Typically, "[t]he time spent perform[ing] activities predominantly for the benefit of the employer is compensable."  *Rodriguez v. Avondale Care Group, LLC*, 2018 WL 1582433 at *3 (S.D.N.Y. March 27, 2018) (internal quotation marks omitted).  However, there are exceptions to this rule.  Indeed,

> "[w]here an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep.... Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked." 29 C.F.R. § 785.22(a). Scheduling a 24-hour shift, therefore, does not necessarily entitle plaintiffs to compensation for the full twenty-four hours.

*Id.*

There is no dispute here that Plaintiff entered into an agreement with Defendant Diligent, which provided that she would not be paid for her meal and sleeping periods, provided she was able to obtain eight hours of sleep.  Facts, ¶ 3. While Plaintiff now claims that she did not receive eight hours of sleep per night due to interruptions from having to care for Ms. Coughlin, Plaintiff's hourly logs submitted to Defendants show that she received eight hours of sleep during *every single night*.  *Id.*, ¶ 9.  Moreover, Plaintiff admitted that she did not ever once complain to any Diligent personnel about her alleged inability to obtain uninterrupted sleep.  Facts, ¶ 17. Plaintiff should not be permitted to pursue this claim based on this record.

In *Rodriguez*, a live in home healthcare aide claimed that her employer violated the FLSA and New York state wage laws in failing to compensate her for overtime worked when she did not receive her breaks without interruption.  The

court held that, "[w]hile [Employer] is plainly at a disadvantage in creating accurate time records when its employees work offsite, it cannot assign that duty to its employees without any guidance of what is expected."  *Rodriguez, supra*, 2018 WL at *7.  In contrast, Defendants here provided plaintiff with a live-in agreement, which provided specific instructions regarding sleeping and meal periods.   Further, Plaintiff admitted that she received instructions from Defendant on how to properly fill out the Timesheets when she began her assignment with Ms. Coughlin.  Facts, ¶ 6.  Thus, there is no dispute that Plaintiff was provided with plenty of instruction regarding how to fill in her timesheets.

In *Rodriguez*, the court held that the employer had constructive knowledge that the plaintiff was unable to take her required breaks because she did not report that she took them on certain occasions.  *Rodriguez*, *supra*, 2018 WL at *7.  Unlike in *Rodriguez*, Defendants here had no knowledge—constructive or otherwise—that Plaintiff was not obtaining a full eight hours of sleep. To the contrary, all of the available records – particularly those completed and signed by Plaintiff – show that she did get her meal and sleep breaks. Thus, Defendants were entitled to rely upon the records maintained and submitted by Plaintiff in determining her pay.

Indeed, as the Sixth Circuit has held,

[a]t the end of the day, an employee must show that the employer knew or should have known that he was working overtime or, better yet, he should report the overtime hours himself. Either way, the employee bears some responsibility for the proper implementation of the FLSA's overtime provisions. An employer cannot satisfy an obligation that it has no reason to think exists. And an employee cannot undermine his employer's efforts to comply with the FLSA by consciously omitting overtime hours for which he knew he could be paid.

*White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012)

(emphasis added; internal quotation marks omitted).  Further,

> [u]nder the FLSA, if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process. . . .   When the employee fails to follow reasonable time reporting procedures she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA.

*Id.* (emphasis added).  The Ninth Circuit reached a similar conclusion in *Forrester*

*v. Roth's I. G. A. Foodliner, Inc.*, 646 F.2d 413 (9th Cir. 1981), holding:

> An employer must have an opportunity to comply with the provisions of the FLSA. This is not to say that an employer may escape responsibility by negligently maintaining records required by the FLSA, or by deliberately turning its back on a situation. However, where the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of § 207(a).

Id. at 414–15 (emphasis added).

Here Defendants established a clear and reasonable procedure for Plaintiff to report her time, and Plaintiff admitted that she was trained in how to comply with it. Notwithstanding her admission to receiving specific instructions, Plaintiff failed *ever* to report that she did not obtain a full eight hours of sleep during her entire tenure while working for Defendant Diligent.  She cannot now file a lawsuit, years later, claiming *for the first* time that she was deprived of her full eight hours of sleep.

In failing to record or complain about any sleep interruptions throughout her entire tenure with Defendant Diligent, Plaintiff failed to meet her obligation of implementing the FLSA's overtime provisions.  Without her providing some type

14

of information regarding her alleged sleep interruptions, Defendant Diligent was prevented from addressing the issue in any way, including paying her for additional overtime worked.  Defendants did not violate the FLSA and/or the CMWA in failing to compensate Plaintiff for additional overtime worked as a result of hers alleged sleep interruptions, where she failed to maintain proper records in accordance with Defendant Diligent's reasonable time-keeping process and failed ever to raise concerns about not obtaining her full eight hours of sleep. Thus, summary judgment should issue on Plaintiff's claim for uncompensated time that she never contemporaneously reported.

    **B.**    ***To the extent Defendants violated the FLSA in any way, their actions in doing so were not willful.***

Plaintiff claims that Defendants violated sections 207, 211 and 215(a)(2) of the FLSA by:  (1) failing to pay Plaintiff overtime; (2) failing to keep proper records regarding the cost of furnishing lodging and food, as well as regarding employees' daily start and stop times; and (3) taking improper deductions from Plaintiff's paycheck for food and lodging.  The damages available depend on whether Defendants' conduct was willful.

    **i.**    **Willfulness Standard**

Plaintiff claims that the statute of limitations for this claim is three years, not two years, because Defendants' actions were done with willful disregard. *See* 29 U.S.C. 255(a).  Plaintiff has no basis to establish willfulness on the part of Defendants.

"The fact that Congress . . . adopted a two-tiered statute of limitations makes it obvious that Congress intended to draw a significant distinction

between ordinary violations and willful violations." *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 132–33, 108 S. Ct. 1677, 1681, 100 L. Ed. 2d 115 (1988).  In *McLaughlin,* the United States Supreme Court analyzed the term "willful" as it appears in the FLSA:

> In common usage the word "willful" is considered synonymous with such words as "voluntary," "deliberate," and "intentional." See Roget's International Thesaurus § 622.7, p. 479; § 653.9, p. 501 (4th ed. 1977). The word "willful" is widely used in the law, and, although it has not by any means been given a perfectly consistent interpretation, it is generally understood to refer to conduct that is not merely negligent.

*McLaughlin v. Richland Shoe Co., supra*, 486 U.S. at 133.

The *McLaughlin* Court applied the same test that it employed in *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 125–130, 105 S.Ct. 613, 623–626, 83 L.Ed.2d 523 (1985), holding that an employer has not committed a willful violation unless "it knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA." *Id.,* at 1680.  In doing so, the Supreme Court rejected a two-step standard espoused by the Petitioner in that case, the Secretary of Labor.  The Secretary of Labor argued for a two-step standard that would deem an FLSA violation willful "if the employer, recognizing it might be covered by the FLSA, acted without a reasonable basis for believing that it was complying with the statute." *Id.,* at 1682. The Supreme Court disagreed, finding that the Secretary's proposed standard would

> permit a finding of willfulness to be based on nothing more than negligence, or, perhaps, on a completely good-faith but incorrect assumption that a pay plan complied with the FLSA in all respects. We believe the Secretary's new proposal, like the discredited *Jiffy June* standard, fails to give effect to the plain language of the statute of limitations.

*Id.* Accordingly,

> [i]t is now settled that to prove a willful violation of the FLSA within the meaning of § 255(a), it must be established that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute. . . .  It follows that [i]f an employer acts unreasonably, but not recklessly, in determining its legal obligation, ... its action ... should not be ... considered [willful].

*Reich v. Waldbaum, Inc.*, 52 F.3d 35, 35 (2d Cir. 1995) (citations omitted; internal quotation marks omitted.).  In other words, negligence is not enough. There must be proof that the employer acted intentionally or with a reckless disregard of its obligations.

### ii. *Plaintiff cannot show that Defendants knew or had reckless disregard for whether their conduct violated the provisions of §§ 207, 211 and 215(a)(2) of the FLSA.*

In order to establish that Defendants knew their conduct violated the FLSA, Plaintiff would have to prove that Defendants (1) had actual or constructive notice that Plaintiff was working hours for which she was not being compensated; and/or (2) were recklessly making improper deductions from Plaintiff's pay for food and lodging provided to her in the course of her work as a live-in aide. Plaintiff cannot do either.

As set forth above in Section III(A), *supra*, and incorporated by reference herein, Defendants were completely unaware that Plaintiff was allegedly working hours for which she was not compensated—i.e., that she was not obtaining her full eight hours of sleep.  Defendants had neither constructive nor actual knowledge of any sleep interruptions Plaintiff was allegedly experiencing.  Nor can Plaintiff show that Defendants had reckless disregard for knowing whether

17

she was allegedly working hours for which she was not compensated. Indeed, Plaintiff admitted that she did not ever complain to any Diligent personnel about her alleged inability to obtain uninterrupted sleep.  Further, Plaintiff completed, signed and submitted timesheets and hourly logs repeatedly representing unequivocally that she was obtaining eight full hours of sleep.

Plaintiff bore responsibility for ensuring she was compensated properly. Her failure to note on her hourly logs any sleep interruptions or in any way make Defendants aware that she was working additional time for which she was not being compensated is fatal to her claim.  Defendants reasonably relied on the documentation of Plaintiff's time that she submitted in calculating her compensation and paid her overtime every week. They should not be called upon now to pay for hours worked that were never reported to them.  *See, e.g., White v. Baptist Mem'l Health Care Corp.*, 699 F.3d at 876; *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d at 414-15.

Not only does Plaintiff's own conduct undercut any claim that Defendants acted willfully, the undisputed record reflects that Defendant Williams reached out to the DOL to ask what version of a timesheet and/or log he should have his live-ins use.  Facts, ¶ 24.  Defendant Williams even sent them various samples of timesheets and hourly logs he considered using and finally settled on using the version he currently uses based on feedback from Ms. Kenefick, who recommended using that particular hourly log, as she felt other versions proposed by Defendant Williams were "too busy" and might cause confusion

18

among the live-ins.  *Id.*  The effort to seek and implement DOL guidance further forecloses any claim that Defendants acted willfully.

The same holds true for the meal and lodging deduction. While Plaintiff claims that Defendants violated the FLSA by improperly deducting from Plaintiff's pay for food and lodging, she provides no proof that she paid for her meals and cannot dispute that she was provided lodging[3].  In fact, Plaintiff admitted in her deposition that Ms. Coughlin's daughters bought food for her and Ms. Coughlin, whether from the grocery store or from a restaurant and also purchased bottled water for her.  Facts, ¶ 27.  Moreover, even if Defendants erred in calculating the proper amount of the deduction, Plaintiff cannot show that they were *recklessly* or *willfully* making improper deductions from Plaintiff's pay for food and lodging.

There is no dispute that Defendant Williams sought advice and counsel from the Connecticut DOL to assist in determining wages and deductions for Defendant Diligent's employees.  In an effort to comply with state and federal wage and hour laws as they relate to live-in aides, Defendant Williams personally reached out to the DOL for assistance.  Facts, ¶ 22.  At first, Defendant Williams reached out to the former Director of the Connecticut Department of Labor, Gary Pechie, for guidance regarding requiring that the live-in aides get eight hours of sleep, plus one hour for each of their three daily meals.  *Id*, ¶ 21*.*  Defendant Williams further informed Mr. Pechie that his staff would be told that, if necessary due to their violation of the rules or due to an event beyond their control, the

---

[3] As noted, Plaintiff testified that there was a period of time in February and March 2017 during which she remained in Ms. Coughlin's house while Ms. Coughlin was in the hospital.  Facts, ¶ 8

client would be staffed differently. *Id.* Mr. Pechie told Defendant Williams that he felt this was a reasonable approach. *Id.* After Mr. Pechie left the DOL, Defendant Williams continued to speak with an investigator from the Wage and Hour Division of the DOL, Kristi Kenefick. *Id.* In response to Defendants' inquiry with the DOL regarding proper pay for live-in aides, Ms. Kenefick provided Defendant Williams with a copy of Field Assistance Bulletin No. 2015-1: Credit towards Wages under Section 3(m) of the FLSA for Lodging Provided to Employees. Facts, ¶ 23. Defendants thus made deductions for food and lodging provided to Plaintiff according to joint guidance from DSS and the DOL. *Id.*, ¶ 20.

Defendants made their best efforts to comply with the written guidance from DSS and the DOL. Indeed, Defendants properly deducted the credits for food and lodging solely from the straight time owed, not from the overtime owed. While Defendants may have inadvertently deducted more than they were permitted to for the food and/or lodging, this was simply a mistake—i.e., negligence. The law is clear that Plaintiff must show that an employer was guilty of more than mere negligence to prove willful conduct. *See McLaughlin v. Richland Shoe Co., supra*, 486 U.S. at 133. That is something Plaintiff cannot do here.

To the contrary, the record is clear that Defendants made herculean efforts to comply with the law. They not only obtained both verbal and written guidance repeatedly from the DOL regarding the proper way to pay live-in aides, but they also went so far as to confirm the best type of paperwork to give to Defendant Diligent's employees to ensure accurate and efficient time-keeping. Moreover,

20

with respect to Plaintiff's claim that she was not compensated for all of his overtime worked, Plaintiff has failed to show—because she cannot—that Defendants had any knowledge, either constructive or actual, that she was working additional overtime for which she was not being compensated.  Under these circumstances, Plaintiff cannot show that Defendants' actions were willful or in reckless disregard for whether they were in compliance with the FLSA.

C.    ***To the extent the Defendants violated the CMWA, they at all times maintained a good faith belief that they were complying with the law.***

Plaintiff claims that Defendants violated the CMWA by failing to pay Plaintiff overtime compensation in violation of General Statutes § 31-76c.  Again, available damages are governed by whether Defendants can establish they acted in "good faith." The undisputed record reveals that they did so.

i.    **Good Faith Belief Standard**

Pursuant to General Statutes § 31-72, "[w]hen any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive, or fails to compensate an employee in accordance with section 31-76k . . ., such employee shall recover, in a civil action, (1) twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, or (2) if the employer establishes that the employer had a good faith belief that the underpayment of wages was in compliance with law, the full amount of such wages or compensation, with costs and such reasonable attorney's fees as may be allowed by the court."  Plaintiff claims that, because of Defendants' alleged unreasonable, arbitrary or bad faith refusal to pay, Plaintiff is entitled to

21

twice the full amount of the wages she was not paid pursuant to General Statutes

§ 31-72.  The undisputed record refutes Plaintiff's claim.

"Good faith" has not been defined in the context of the CMWA.  Thus,

Courts look to the interpretation of "good faith" as used in the FLSA:

> The United States Court of Appeals for the Second Circuit has defined "good faith" as "an honest intention to ascertain what the [FLSA] requires and to comply with it." *Reich v. Southern New England Telecommunications Corp.,* 121 F.3d 58, 71 (2d Cir. 1997). It requires "more than ignorance of the prevailing law or uncertainty about its development. It requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them." *Id*

*Stevens v. Vito's by the Water, LLC*, 2017 WL 6045302 at *5 (Conn. Super. Nov. 9,

2017) (*Noble, J.*).

> ii.   *To the extent that Defendants violated the CMWA, they have shown that they, at all times, had a good faith belief that they were complying with the law, in that they attempted to ascertain the requirements of the law and acted to comply with them.*

In order to avoid double damages, Defendants have the burden of showing

that they had a good faith belief that they were complying with the CMWA by

showing that they took steps to ascertain the requirements of the law and then

acted to comply with them.

As set forth above in Section III(A), *supra*, and incorporated by reference

herein, Defendants were completely unaware that Plaintiff was allegedly working

hours for which she was not compensated—i.e., that she was not obtaining her

full eight hours of sleep.  Defendants had appropriate paperwork, procedures,

and training in place to ensure that they were in compliance.  Defendants had

neither constructive nor actual knowledge of any sleep interruptions Plaintiff was

allegedly experiencing.  To the contrary, Plaintiff prepared, signed and submitted timesheets and hourly logs representing unequivocally that she was obtaining eight full hours of sleep, and she has produced no documentation to show that she ever made any complaints regarding an inability to sleep uninterrupted.  In fact, Plaintiff has flat out admitted that she *never complained* to anyone at Diligent regarding any alleged sleep interruptions.  Plaintiff bore some responsibility for ensuring she was compensated properly.  *See White*, *supra*, 699 F.3d at 876; *Forrester*, *supra*, 646 F.2d 413.  Her failure to note on her hourly logs any sleep interruptions or in any way make Defendants aware that she was working additional time for which she was not being compensated is fatal to her claim. Defendants reasonably relied on the documentation of Plaintiff's time that she submitted and paid her according to the time recorded on her hourly logs and timesheets.

Further, Defendant Williams reached out to the DOL to ask what version of a timesheet and/or log he should have his live-ins use.  Facts, ¶ 24.  Defendant Williams even sent them various samples of timesheets he considered using and finally settled on the version he currently uses based on feedback from Ms. Kenefick, who recommended using that particular hourly log, as she felt other versions proposed by Defendant Williams were "too busy" and might cause confusion among the live-ins.  *Id.*

Thus, Defendants took steps to ascertain the requirements of the CMWA, including corresponding with the DOL and obtaining written guidance from the DOL.  The Defendants then implemented this advice in utilizing the hourly logs

23

recommended by the DOL and in adhering to the law by paying Plaintiff for all overtime she documented on her hourly logs and timesheets.  Defendants did not violate the CMWA, but to the extent they failed to compensate Plaintiff for any additional hours she may have worked, such good faith error was due to plaintiff's failure to properly record her time.

## IV.    CONCLUSION

Plaintiff has failed to prove that Defendants violated either the FLSA or the CMWA in allegedly failing to compensate Plaintiff for additional hours that she worked.  The undisputed facts establish that Defendants relied on Plaintiff's hourly logs and lack of complaints in determining Plaintiff's pay.  There is also no dispute that she was paid for every compensable hour, and paid overtime for every hour she reported working over 40 hours in a week. Further, Defendants took affirmative steps to try to ensure Plaintiff was being paid properly. Defendants went to the DOL for guidance, and applied such guidance to the best of their abilities. Such actions do not constitute willful behavior; instead, they demonstrate a good faith attempt to comply with the law.  Based on the undisputed evidence presented, summary judgment should accordingly be entered in favor of the Defendants with regard to Plaintiff's claims (1) that Defendants violated the FLSA or the CMWA in failing to compensate Plaintiff for additional, unreported overtime; (2) that Defendants knew or had reckless disregard for whether their conduct violated the provisions of §§ 207, 211 and 215(a)(2) of the FLSA; and (3) that Defendants did not act in good faith when they allegedly violated the CMWA.

Respectfully submitted,


/s/ *Maura A. Mastrony*
Craig T. Dickinson (ct18053)
Maura A. Mastrony (ct27787)
LITTLER MENDELSON, P.C.
One Century Tower
265 Church Street
Suite 300
New Haven, CT  06510
Telephone: 203.974.8700
Facsimile: 203.974.8799
cdickinson@littler.com
mmastrony@littler.com

<u>**CERTIFICATE OF SERVICE**</u>

**I hereby certify that on October 23, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.  Parties may access this filing through the Court's electronic filing system.**

*/s/ Maura A. Mastrony*
**Maura A. Mastrony**

26