# Exhibit A



**ComForcare Senior Services**
Agreement Concerning Live In Aides

We agree that time the undersigned employee spends sleeping while on assignment with a client will be treated as hours worked as follows:

(1)     **Less than 24 Hours.** If the employee is required to be on duty for less than 24 hours, sleeping will be treated as hours worked.

(2)     **24 Hours or More.** If the employee is required to be on duty for 24 hours or more, a regularly scheduled sleeping period of no more than 8 hours will be excluded from hours worked provided adequate sleeping facilities are provided and the employee can usually have an uninterrupted night's sleep. If you are not able to get 8 hours sleep each day you'll be removed and different personnel will be tried or the case will be converted to hourly or transferred back to the appropriate authorities and deemed live in inappropriate.

It is agreed that adequate sleeping facilities do not require a bed or separate bed room. If the employee does not believe adequate sleeping facilities have been provided, the employee should immediately contact ComForcare's office upon arrival at the assignment.

If the sleeping period is interrupted by a need to provide services for the client, the period of the interruption will count as hours worked. If the period of interruption is such that the employee cannot get at least 5 hours of uninterrupted sleep during the scheduled sleep period, the entire time will be treated as hours worked.

You are also required to take 3 one hour break for each meal (breakfast, lunch, dinner) Between those breaks you must also take 2 (½) hour breaks. **Meal provision is the full responsibility of the client on a daily basis.**

---

_(signature)_ _____
Client's Signature          Date

JACQUELINE SMITH COUGHLIN     _(signature)_ 9/21/16
Client's Name - Printed                    Administrator's Signature     Date

PMap _____
Employee's Signature          Date

PINKIE BENA MAPHUTHA
Employee's Name - Printed

**Updated 12/18/2015**

CONFIDENTIAL          **PM Ex 3**          DILIGENT0053

Exhibit B

**ComForcare Home Care Services PCA Timesheet**
155 Main St., Suite #303, Danbury CT 06810
Ph. (203)702-1181, Fax (203)702-4458

**Client Full Name:** (Please Print) Jackie Smith Coughline

**Client EMS #:**

**Week Ending Date:** (Always Saturday) 9-24-2016

**Employee Full Name:** (Please Print)

| DATES → | | SUN | | MON | | TUES | | WED | | THURS | | FRI | | SAT | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | 9-21-16 | | 9-22 16 | | 9-23-16 | | 9-24-16 | |
| TIME IN | am pm | | am pm | | am pm | | am pm | 6 pm | am pm | 6 | am pm | 6 | am pm | 6 | am pm |
| TIME OUT | am pm | | am pm | | am pm | | am pm | 6 pm | am pm | 6 pm | am pm | 6 pm | am pm | 6 pm |
| DAILY TOTAL | | | | | | | | 4 | | 24 | | 24 | | 24 | |

**ADL/IADL CODES    R - ROUTINE    F - FREQUENT    I - INTERMITTENT**

| ADLs | SUN | MON | TUES | WED | THURS | FRI | SAT |
|---|---|---|---|---|---|---|---|
| Bathing | | | | R | R | R | R |
| Dressing | R | R | R | R | R | R | R |
| Eating/Feeding | R | R | R | R | R | R | R |
| Grooming | R | R | R | R | R | R | R |
| Mobility/Walking | R | R | R | R | R | R | R |
| Toileting/Bowel and bladder care | R | R | R | | | R | R |
| Transferring | | | | R | | R | R |
| IADLs | | | | | | | |
| Cueing/Reminders for self medication administration | | | | | | | |
| Housekeeping | | | | | | | |
| Laundry | | | | | | | |
| Meal Preparation/Planning | | | | | | | |
| Shopping | | | | | | | |
| Other | | | | | | | |
| Accompany to appointments | | | | | | | |
| Conversation | | | | | | | |
| Errands | | | | | | | |
| Mail/Correspondence | | | | | | | |
| Telephone Use | | | | | | | |
| Caregiver Initial Daily ---> | | | | PM | PM | PM | PM |

**CLIENT FULL SIGNATURE** (or Legal Rep.) (DAILY): Or "client unable to sign today"

Carol mctay / Carol mctay / Carol mctay / Carol mctay / Carol mctay / Carol mctay / Carol mctay

**MILEAGE:**          **WEEKLY    TOTAL:**

*Client signature authorizes the billing of the above hours and that the hours are accurate. ***Please do not authorize in advance of service. - ooci

**Employee Signature:** pmdy          **Date:** 9-24-2016

P.M. Ex 7

ComForcare Homecare Services
Live-In Services
Hourly Log

Please estimate daily hours.
This will not affect your pay.
Complete this in addition in your flowsheet.
Total hours listed here, typically will equal 24 hours.
Your client's signature is not required.

Client Name __JACKIE SMITH COUGHLINE__

Caregiver Name __ANKIE B MAPHUTHA__

Caregiver Signature __pmay__

| Date | Day of the Week | A. General Household Work (This time should be kept to approximately 1.5 hrs a day. This work includes vacuuming, dusting furniture, washing floors & windows, cleaning refrigeration and ovens) | B. Total Hours Of Sleeping Time (Should be 8 but no less than 5) | C. Total Hours Of Break-Time (Must be at least 30 minutes of uninterrupted time to be a break.) | D. Remaining Time With Client Specific Activities, Including... | E. Total Of All Hours (Should be the sum of columns A,B,C,D) | For Office Use (% Obtained as value of column A divided by the resulting value of column E minus C) |
|---|---|---|---|---|---|---|---|
| | | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 9·21·16 | WEND | | | | 10.5 hrs | 24 | |
| 9·22·16 | THURS) | 1.5 hrs | 8 hrs | 1+3(meal) | 10.5 hrs | 24 | |
| 9·23·16 | FRIDAY | 1.5 hrs | 8 hrs | 1+3(meal) | 10.5 hrs | 24 | |
| 9·24·16 | SAT | 1.5 hrs | 8 hrs | 1+3(meal) | 10.5 hrs | 24 | |
| | | | | | | 24 | |
| | | | | | | 24 | |

CONFIDENTIAL

DILIGENT0022

**ComForcare Home Care Services PCA Timesheet**
155 Main St., Suite #303, Danbury CT 06810
Ph. (203)702-1181, Fax (203)702-4458

| Client Full Name: (Please Print) | Jackie Smith-Coughlin | | Client EMS #: | | | | |
|---|---|---|---|---|---|---|---|
| Week Ending Date: (Always Saturday) | 10-01-2016 | | Employee Full Name: (Please Print) | ANKIE MAPHUTHA | | | |
| | **SUN** | **MON** | **TUES** | **WED** | **THURS** | **FRI** | **SAT** |
| DATES → | 9-25/16 | 9-26/16 | 9-27/16 | 9-28/16 | 9-29/6 | 9-30/6 | 10/01/16 |
| TIME IN | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm |
| TIME OUT | 10 am/pm | 10 am/pm | 10 am/pm | 10 am/pm | 10 am/pm | 10 am/pm | 10 am/pm |
| DAILY TOTAL | 24 | 24 | 24 | 24 | 24 | 24 | 24 |

| ADL/IADL CODES | R - ROUTINE | F - FREQUENT | | I - INTERMITTENT | | | |
|---|---|---|---|---|---|---|---|
| **ADLs** | | | | | | | |
| Bathing | R | R | R | R | R | R | R |
| Dressing | R | R | R | R | R | R | R |
| Eating/Feeding | R | R | R | R | R | R | R |
| Grooming | R | R | R | R | R | R | R |
| Mobility/Walking | R | R | R | R | R | R | R |
| Toileting/Bowel and bladder care | R | R | R | | R | R | R |
| Transferring | R | R | R | | R | R | R |
| **IADLs** | | | | | | | |
| Cueing/Reminders for self medication administration | R | R | R | R | R | R | R |
| Housekeeping | R | R | R | R | R | R | R |
| Laundry | F | | | | | | |
| Meal Preparation/Planning | | | | | | | |
| Shopping | | | | | | | |
| Other Walking Feeding the Dog | | R | R | R | R | R | R |
| Accompany to appointments | | | | | | | |
| Conversation | R | R | R | R | | R | R |
| Errands | | | | | | | |
| Mail/Correspondence | | | | | | | |
| Telephone Use | | | | | | | |
| | | | | | | | |
| Caregiver Initial Daily ---→ | PM | PM | PM | PM | PM | PM | PM |
| CLIENT FULL SIGNATURE (or Legal Rep.) (DAILY): Or "client unable to sign today" | Carol McclaY | Carol McclaY | Carol McclaY | Carol McclaY | Carol McclaY | Carol McclaY | Carol McclaY |

| | MILEAGE: | | WEEKLY | TOTAL: | |
|---|---|---|---|---|---|

*Client signature authorizes the billing of the above hours and that the hours are accurate. ***Please do not authorize in advance of service. - ccci

Employee Signature: _PMcJA_          Date: _10-01-2016_

CONFIDENTIAL

DILIGENT0023

ComForcare Homecare Services
Live-In Services
Hourly Log

Please estimate daily hours.
This will not affect your pay.
Complete this in addition in your flowsheet.
Total hours listed here, typically will equal 24 hours.
Your client's signature is not required.

Client Name Jackie Smith-Coughlin

Caregiver Name Pinkie Bena Mcphutta

Caregiver Signature Privael

| Date | Day of the Week | A General Household Work This time should be kept to approximately 1.5 hrs a day. This work includes vacuuming, dusting furniture, washing floors & windows, cleaning refrigerators and ovens | B Total Hours Of Sleeping Time Should be 8 but no less than 5 | C Total Hours Of Break-Time Must be at least 30 minutes of uninterrupted time to be a break | D Remaining Time With Client Specific Activities, Including: Dressing client, using toilet, personal hygiene, medication reminders, preparing meals for client, making beds for client, washing clothes for client, exercise, floor effect transfer for client, cleaning duties after meal prep for client, errands, transport, laundry for client, cleaning the bathtub after a shower/bath for client | E Total Of All Hours (Should be the sum of columns A,B,C,D) | For Office Use (% Calculated as value of Column A divided by the remaining value of columns B minus B minus C) |
|---|---|---|---|---|---|---|---|
| 9.25.16 | Sunday | 1.5 | 8 | 1 +3(meal) | 10.5 | 24 | |
| 9.26.16 | Monday | 1.5 hrs | 8 hrs | 1+3(meal) | 10.5 hrs | 24 | |
| 9.27.16 | Tuesday | 1.5 hrs | 8 hrs | 1+3(meal) | 10.5 hrs | 24 | |
| 9.28.16 | Wednesday | 1.5 hrs | 8 hrs | 1+3(meal) | 10.5 hrs | 24 | |
| 9.29.16 | Thursday | 1.5 hrs | 8 hrs | 1+3(meal) | 10.5 hrs | 24 | |
| 9.30.16 | Friday | 1.5 hrs | 8 hrs | 1+3(meal) | 10.5 hrs | 24 | |
| 10.01.16 | Sat | 1.5 hrs | 8 hrs | 1+3(meal) | 10.5 hrs | 24 | |

CONFIDENTIAL

DILIGENT0024

**ComForcare Home Care Services PCA Timesheet**
155 Main St., Suite #305, Danbury CT 06810
Ph. (203)702-1181, Fax (203)702-4458

| Client Full Name: (Please Print) | Jacob Smith-Coughlin | | Client EMS #: | | | | |
|---|---|---|---|---|---|---|---|
| **Week Ending Date:** (Always Saturday) | 10-8-2016 | | **Employee Full Name:** (Please Print) Pinkie & Mophutha | | | | |
| | **SUN** | **MON** | **TUES** | **WED** | **THURS** | **FRI** | **SAT** |
| DATES → | 10-2-16 | 10-3-16 | 10-4-16 | 10-5-16 | 10-6-16 | 10-7-16 | 10-8-16 |
| TIME IN | am pm | am pm | am pm | am pm | am pm | am pm | am pm |
| TIME OUT | am pm | am pm | am pm | am pm | am pm | am pm | am pm |
| DAILY TOTAL | 24 | 24 | 24 | 24 | 24 | 24 | 24 |
| **ADL/IADL CODES** | **R - ROUTINE** | **F - FREQUENT** | **I - INTERMITTENT** | | | | |
| **ADLs** | | | | | | | |
| Bathing | R | R | R | R | R | R | R |
| Dressing | R | R | R | R | R | R | R |
| Eating/Feeding | R | R | R | R | R | R | R |
| Grooming | R | R | R | R | R | R | R |
| Mobility/Walking | R | R | R | R | R | R | R |
| Toileting/Bowel and bladder care | R | R | R | R | R | R | R |
| Transferring | R | R | R | R | R | R | R |
| **IADLs** | | | | | | | |
| Cueing/Reminders for self medication administration | R | R | R | R | R | R | R |
| Housekeeping | R | R | R | R | R | R | R |
| Laundry | I | | T | | | | |
| Meal Preparation/Planning | R | L | R | L | R | R | R |
| Shopping | | | | | | | |
| Other working the bag | R | R | R | R | R | R | R |
| Accompany to appointments | | | | | | | |
| Conversation | R | R | R | R | | R | R |
| Errands | | | | | | | |
| Mail/Correspondence | | | | | | | |
| Telephone Use | | | | | | | |
| Caregiver Initial Daily ---→ | PM | PM | PM | PM | PM | PM | PM |
| **CLIENT FULL SIGNATURE** (or Legal Rep.) (DAILY): Or "client unable to sign today" | | | | | | | |
| | **MILEAGE:** | | | **WEEKLY    TOTAL:** | | | |

*Client signature authorizes the billing of the above hours and that the hours are accurate. ***Please do not authorize in advance of service. - ceci

Employee Signature: _pmaph_____    Date: 10-8-2016

CONFIDENTIAL

DILIGENT0025

**ComForcare Home Care Services PCA Timesheet**
155 Main St., Suite #303, Danbury CT 06810
Ph. (203)702-1181, Fax (203)702-4458

| Client Full Name: (Please Print) Jacqui Smith-Coughlin | | | Client EMS #: P. | | | | |
|---|---|---|---|---|---|---|---|
| Week Ending Date: (Always Saturday) 10-15-2016 | | | Employee Full Name: (Please Print) Pinkie Bena Maphutha | | | | |
| | SUN | MON | TUES | WED | THURS | FRI | SAT |
| DATES → | 10-9-16 | 10-10-16 | 10-11-16 | 10-12-16 | 10-13-16 | 10-14-16 | 10-15-2016 |
| TIME IN | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm |
| TIME OUT | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm |
| DAILY TOTAL | 24 | 24 | 24 | 24 | 24 | 24 | 24 |

| ADL/IADL CODES | R - ROUTINE | F - FREQUENT | | I - INTERMITTENT | | | |
|---|---|---|---|---|---|---|---|
| ADLs | | | | | | | |
| Bathing | R | R | R | R | R | R | R |
| Dressing | R | R | R | R | R | R | R |
| Eating/Feeding | R | R | R | R | R | R | R |
| Grooming | R | R | R | R | R | R | R |
| Mobility/Walking | R | R | R | R | R | R | R |
| Toileting/Bowel and bladder care | R | R | R | R | R | R | R |
| Transferring | R | R | R | | R | R | R |
| IADLs | | | | | | | |
| Cueing/Reminders for self medication administration | R | R | R | R | R | R | R |
| Housekeeping | R | F | R | R | R | R | R |
| Laundry | I | | I | | | | |
| Meal Preparation/Planning | R | F | R | R | R | R | R |
| Shopping | | | | | | | |
| Other working the dog | R | R | R | R | R | R | R |
| Accompany to appointments | | | | | | | |
| Conversation | R | R | R | R | R | R | R |
| Errands | | | | | | | |
| Mail/Correspondence | | | | | | | |
| Telephone Use | | | | | | | |
| | | | | | | | |
| Caregiver Initial Daily → | Pm | Pm | Pm | Pm | Pm | Pm | Pm |

| CLIENT FULL SIGNATURE (or Legal Rep.) (DAILY): Or "client unable to sign today" | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| | MILEAGE: | WEEKLY | TOTAL: |
|---|---|---|---|

*Client signature authorizes the billing of the above hours and that the hours are accurate. ***Please do not authorize in advance of service. - cool

Employee Signature: _____   Date: 10-15-2016

**CONFIDENTIAL**

DILIGENT0026

# ComForcare Homecare Services
## Live-In Services
## Hourly Log

Please estimate daily hours.
This will not affect your pay.
Complete this in addition in your flowsheet.
Total hours listed here, typically will equal 24 hours.
Your client's signature is not required.

Client Name ___Jacqueline smith-Carraghery___

Caregiver Name ___Pinkie Mapfumidze___

Caregiver Signature ___Pmd___

| Date | Day of the Week | A. General Household Work | B. Total Hours Of Sleeping Time | C. Total Hours Of Break Time | D. Remaining Time With Client Specific Activities, Including | E. Total Of All Hours | For Office Use |
|---|---|---|---|---|---|---|---|
| 10-9-16 | Sunday | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 10-10-16 | Monday | 1.5 hrs | 8 hrs | 1+3(meal) | 10.5 hrs | 24 | |
| 10-11-16 | Tuesday | 1.5 hrs | 8 hrs | 1+3(meals) | 10.5 hrs | 24 | |
| 10-12-16 | Wednesday | 1.5 hrs | 8 hrs | 1+3(meals) | 10.5 hrs | 24 | |
| 10-13-16 | Thursday | 1.5 hrs | 8 hrs | 1+3(meal) | 10.5 hrs | 24 | |
| 10-14-16 | Friday | 1.5 hrs | 8 hrs | 1+3(meal) | 10.5 hrs | 24 | |
| 10-15-16 | Saturday | 1.5 hrs | 8 hrs | 1+3(meal) | 10.5 hrs | 24 | |

CONFIDENTIAL

DILIGENT0027

**ComForcare Home Care Services PCA Timesheet**
155 Main St., Suite #303, Danbury CT 06810
Ph. (203)702-1181, Fax (203)702-4458

Client Full Name: Jacque SmithLaughlie
(Please Print)

Client EMS #:

Week Ending Date: 10-22-2016
(Always Saturday)

Employee Full Name: PINILIE B MAPHUMA
(Please Print)

| | SUN | MON | TUES | WED | THURS | FRI | SAT |
|---|---|---|---|---|---|---|---|
| DATES → | 10-16-16 | 10-17-16 | 10-18-16 | 10-19-16 | 10-20-16 | 10-21-16 | 10-22-16 |
| TIME IN | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm |
| TIME OUT | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm |
| DAILY TOTAL | 24 | 24 | 24 | 24 | 24 | 24 | 26 |

**ADL/IADL CODES    R - ROUTINE    F - FREQUENT    I - INTERMITTENT**

| ADLs | | | | | | | |
|---|---|---|---|---|---|---|---|
| Bathing | R | R | R | R | R | R | R |
| Dressing | R | R | R | R | R | R | R |
| Eating/Feeding | R | R | R | R | R | R | R |
| Grooming | R | R | R | R | R | R | R |
| Mobility/Walking | R | R | R | R | R | R | R |
| Toileting/Bowel and bladder care | R | R | R | R | R | R | R |
| Transferring | R | R | R | R | R | R | R |
| **IADLs** | | | | | | | |
| Cueing/Reminders for self medication administration | R | R | | R | R | R | R |
| Housekeeping | R | R | | R | R | R | R |
| Laundry | I | | | | | | |
| Meal Preparation/Planning | R | R | | R | R | R | R |
| Shopping | | | | | | | |
| Other Walking the Dog | | R | R | R | R | R | R |
| Accompany to appointments | | | | | | | |
| Conversation | R | R | R | R | R | R | R |
| Errands | | | | | | | |
| Mail/Correspondence | | | | | | | |
| Telephone Use | | | | | | | |
| Caregiver Initial Daily →| PM | PM | PM | PM | PM | PM | PM |

CLIENT FULL SIGNATURE
(or Legal Rep.)
(DAILY): Or
"client unable to sign today"

| MILEAGE: | WEEKLY TOTAL: |

*Client signature authorizes the billing of the above hours and that the hours are accurate. ***Please do not authorize in advance of service. - ccci

Employee Signature: _____    Date: 10-22-2016

CONFIDENTIAL

DILIGENT0028

ComForcare Homecare Services
Live-In Services
Hourly Log

Please estimate daily hours.
This will not affect your pay.
Complete this in addition in your flowsheet.
Total hours listed here, typically will equal 24 hours.
Your client's signature is not required.

Client Name _Jacqueline Smith Coughline_

Caregiver Name _Pinkie Bena Maphutha_

Caregiver Signature _Map_

| Date | Day of the Week | A General Household Work (This time should be kept to approximately 1.5 hrs a day. This work includes vacuuming, dusting furniture, washing floors & windows, cleaning refrigerators and ovens) | B Total Hours Of Sleeping Time (Should be 8 but no less than 5) | C Total Hours Of Break-Time (Must be at least 30 minutes of uninterrupted time to be a break) | D Remaining Time With Client Specific Activities, Including: (Dressing client, using toilet, personal hygiene, medication reminders, preparing meals for client, making bed for client, washing dishes for client, emptying trash after meals for client, planning dishes after meal prep for client, errands, transport, laundry for client, cleaning the bathtub after a shower/bath for client.) | B Total Of All Hours (should be the sum of columns A,B,C,D) | For Office Use (% Calculated as value of column A divided by the remaining value of column B minus B1 minus C.) |
|---|---|---|---|---|---|---|---|
| 10-16-16 | SUN | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 10-17-16 | MON | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 10-18-16 | TUES | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 10-19-16 | WED | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 10-20-16 | THURS | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 10-21-16 | FRIDAY | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 10-22-16 | SAT | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |

CONFIDENTIAL

**ComForcare Home Care Services PCA Timesheet**
155 Main St., Suite #303, Danbury CT 06810
Ph. (203)702-1181, Fax (203)702-4458

**Client Full Name:** Jacque Smith-Coughlin
(Please Print)

**Client EMS #:**

**Week Ending Date:** 10-29-2016
(Always Saturday)

**Employee Full Name:** Pinkie B. Maphutha
(Please Print)

| | SUN | MON | TUES | WED | THURS | FRI | SAT |
|---|---|---|---|---|---|---|---|
| DATES → | 10-23-16 | 10-24-16 | 10-25-16 | 10-26-16 | 10-27-16 | 10-28-16 | 10-29-16 |
| TIME IN | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm |
| TIME OUT | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm |
| DAILY TOTAL | 24 | 24 | 24 | 24 | 24 | 24 | 24 |

**ADL/IADL CODES    R - ROUTINE    F - FREQUENT    I - INTERMITTENT**

| ADLs | | | | | | | |
|---|---|---|---|---|---|---|---|
| Bathing | R | R | R | R | R | R | R |
| Dressing | R | R | R | R | R | R | R |
| Eating/Feeding | R | R | R | R | R | R | R |
| Grooming | R | R | R | R | R | R | R |
| Mobility/Walking | R | R | R | R | R | R | R |
| Toileting/Bowel and bladder care | R | R | R | R | R | R | R |
| Transferring | R | R | R | R | R | R | R |
| IADLs | | | | | | | |
| Cueing/Reminders for self medication administration | R | R | | R | R | R | R |
| Housekeeping | R | R | | R | R | | R |
| Laundry | l | | | | | | |
| Meal Preparation/Planning | R | | | R | R | R | R |
| Shopping | R | | | R | R | R | R |
| Other Work the dog | R | R | R | R | R | R | R |
| Accompany to appointments | R | R | | R | | R | R |
| Conversation | R | R | R | R | | R | R |
| Errands | | | | | | | |
| Mail/Correspondence | | | | | | | |
| Telephone Use | | | | | | | |
| Caregiver Initial Daily → | Pm | Pm | Pm | Pm | Pm | Pm | Pm |
| CLIENT FULL SIGNATURE (or Legal Rep.) (DAILY): Or "client unable to sign today" | | | | | | | |

PM ___

| MILEAGE: | | WEEKLY | TOTAL: |
|---|---|---|---|

10-29-2016

CONFIDENTIAL

DILIGENT0030

ComForcare Homecare Services
Live-In Services
Hourly Log

Please estimate daily hours.
This will not affect your pay.
Complete this in addition in your flowsheet.
Total hours listed here, typically will equal 24 hours.
Your client's signature is not required.

Client Name _Jacqueline Smith Coustline_

Caregiver Name _Philue Berne Maphuthia_

Caregiver Signature _PMell_

| Date | Day of the Week | A General Household Work (This time should be kept to approximately 1.5 hrs a day. This work includes vacuuming, dusting furniture, washing floors & windows, cleaning refrigerators and ovens) | B Total Hours Of Sleeping Time (Should be 8 but no less than 5) | C Total Hours Of Break-Time (Must be at least 30 minutes of uninterrupted time to be a break) | D Remaining Time With Client Specific Activities, Including (Dressing client, using toilet, personal hygiene, medication reminders, preparing meals for client, making bed for client, washing dishes for client, sweeping floor after meals for client, cleaning dishes after meal prep for client, errands, transport, laundry for client, cleaning the bathtub after a shower/bath for client.) | E Total Of All Hours (should be the sum of columns A,B,C,D) | For Office Use (% Calculated as value of column A divided by the resulting value of column E minus C) |
|---|---|---|---|---|---|---|---|
| 10-23-16 | SUN | 1.5 | 8 | 1 +3(meal) | 10.5 | 24 | |
| 10-24-16 | MON | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 10-25-16 | TUES | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 10-26-16 | WED | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 10-27-16 | THURS | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 10-28-16 | FRI | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 10-29-16 | SAT | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |

DILIGENT0031

CONFIDENTIAL

**ComForcare Home Care Services PCA Timesheet**
155 Main St., Suite #303, Danbury CT 06810
Ph. (203)702-1181, Fax (203)702-4458

Client Full Name: (Please Print) Jacqueline Smith-Coudine

Client EMS #:

Week Ending Date: (Always Saturday) 11 − 05 − 2016

Employee Full Name: (Please Print) PINKIE B - MAPHUTHA

| | SUN | MON | TUES | WED | THURS | FRI | SAT |
|---|---|---|---|---|---|---|---|
| DATES → | 10-30-16 | 10-31-16 | 11-01-16 | 11-02-16 | 11-03-16 | 11-04-16 | 11-05-16 |
| TIME IN | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm |
| TIME OUT | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm |
| DAILY TOTAL | 24 | 24 | 24 | 24 | 24 | 24 | 24 |

| ADL/IADL CODES | R - ROUTINE | F - FREQUENT | | I - INTERMITTENT | | | |
|---|---|---|---|---|---|---|---|
| **ADLs** | | | | | | | |
| Bathing | R | R | R | R | R | R | R |
| Dressing | R | R | R | R | R | R | R |
| Eating/Feeding | R | R | R | R | R | R | R |
| Grooming | R | R | R | R | R | R | R |
| Mobility/Walking | R | R | R | R | R | R | R |
| Toileting/Bowel and bladder care | R | R | R | R | R | R | R |
| Transferring | R | R | R | R | R | R | R |
| **IADLs** | | | | | | | |
| Cueing/Reminders for self medication administration | R | R | R | R | R | R | R |
| Housekeeping | R | R | R | R | R | R | R |
| Laundry | | | | | | | |
| Meal Preparation/Planning | R | R | R | R | R | R | R |
| Shopping | | | | | | | |
| Other Work the Dog | R | R | R | R | R | R |
| Accompany to appointments | | | | | | | |
| Conversation | R | R | R | R | | R | R |
| Errands | | | | | | | |
| Mail/Correspondence | | | | | | | |
| Telephone Use | | | | | | | |
| Caregiver Initial Daily → | PM | PM | PM | PM | PM | PM | PM |

CLIENT FULL SIGNATURE (or Legal Rep.) (DAILY): Or "client unable to sign today"

PMak

MILEAGE: | WEEKLY | TOTAL:

11-05-2016

DILIGENT0032

ComForcare Homecare Services
Live-In Services
Hourly Log

Please estimate daily hours.
This will not affect your pay.
Complete this in addition in your flowsheet.
Total hours listed here, typically will equal 24 hours.
Your client's signature is not required.

Client Name: Jacqueline Smith Coughline
Caregiver Name: Antie Bena Mophutla
Caregiver Signature: PMoly

| Date | Day of the Week | A General Household Work (This time should be kept to approximately 1.5 hrs a day. This work includes vacuuming, dusting furniture, washing floors & windows, cleaning refrigerator and ovens) | B Total Hours Of Sleeping Time (Should be 8 but no less than 5) | C Total Hours Of Break-Time (Must be at least 30 minutes of uninterrupted time to be a break) | D Remaining Time With Client Specific Activities, including: (Dressing client, using toilet, personal hygiene, medication reminders, preparing meals for client, making bed for client, washing clothes for client, sweeping floor after meals for client, cleaning dishes after meal prep for client, errands, transport, laundry for client, cleaning the bathtub after a shower/bath for client.) | B Total Of All Hours (should be the sum of columns A,B,C,D) | For Office Use (% Calculated as value of column A divided by the remaining value of column B minus C.) |
|---|---|---|---|---|---|---|---|
| 10-20-16 | SUN | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 10-31-16 | MON | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 11-01-16 | TUES | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 11-02-16 | WED | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 11-03-16 | THURS | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 11-04-16 | FRI | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 11-05-16 | SAT | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |

CONFIDENTIAL

DILIGENT0033

**ComForcare Home Care Services PCA Timesheet**
155 Main St., Suite #303, Danbury CT 06810
Ph. (203)702-1181, Fax (203)702-4458

Client Full Name: (Please Print) Jacque Smith Coughline

Client EMS #:

Week Ending Date: (Always Saturday) 11-12-2016

Employee Full Name: (Please Print) Pinkie Bena Maphutra

| | SUN | MON | TUES | WED | THURS | FRI | SAT |
|---|---|---|---|---|---|---|---|
| DATES → | 11-13-16 | 11-14-16 | 11-15-16 | 11-16-16 | 11-17-16 | 11-18-16 | 11-19-2016 |
| TIME IN | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm |
| TIME OUT | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm |
| DAILY TOTAL | 24 | 24 | 24 | 24 | 24 | 24 | 24 |

ADL/IADL CODES    R - ROUTINE    F - FREQUENT    I - INTERMITTENT

| ADLs | SUN | MON | TUES | WED | THURS | FRI | SAT |
|---|---|---|---|---|---|---|---|
| Bathing | R | R | R | R | R | R | R |
| Dressing | R | R | R | R | R | R | R |
| Eating/Feeding | R | R | R | R | R | R | R |
| Grooming | R | R | R | R | R | R | R |
| Mobility/Walking | R | R | R | R | R | R | R |
| Toileting/Bowel and bladder care | R | R | R | R | R | R | R |
| Transferring | R | R | R | R | R | R | R |
| **IADLs** | | | | | | | |
| Cueing/Reminders for self medication administration | R | R | R | R | R | R | R |
| Housekeeping | R | R | R | R | R | R | R |
| Laundry | | | | | | | |
| Meal Preparation/Planning | R | R | R | R | R | R | R |
| Shopping | | | | | | | |
| Other Walk the Dog | R | R | R | R | R | R | R |
| Accompany to appointments | | | | | | | |
| Conversation | R | R | R | R | R | R | R |
| Errands | | | | | | | |
| Mail/Correspondence | | | | | | | |
| Telephone Use | | | | | | | |
| | | | | | | | |
| Caregiver Initial Daily → | PM | PM | PM | PM | PM | PM | PM |

CLIENT FULL SIGNATURE (or Legal Rep.) (DAILY): Or "client unable to sign today"

| MILEAGE: | WEEKLY    TOTAL: |
|---|---|

*Client signature authorizes the billing of the above hours and that the hours are accurate. ***Please do not authorize in advance of service. - cool

Employee Signature: PMaM

Date: 11-19-2016

**CONFIDENTIAL**

DILIGENT0034

ComForcare Homecare Services
Live-In Services
Hourly Log

Please estimate daily hours.
This will not affect your pay.
Complete this in addition in your flowsheet.
Total hours listed here, typically will equal 24 hours.
Your client's signature is not required.

Client Name _Jacqueline Smith-Coughline_

Caregiver Name _Ankiè bena Maphutha_

Caregiver Signature _pmgh_

| Date | Day of the Week | A<br>General Household Work<br><br>This time should be kept to approximately 1.5 hrs a day. This work includes vacuuming, dusting furniture, washing floors & windows, cleaning refrigerators and ovens | B<br>Total Hours Of Sleeping Time<br><br>Should be 8 but no less than 5 | C<br>Total Hours Of Break-Time<br><br>Must be at least 30 minutes of uninterrupted time to be a break. | D<br>Remaining Time With Client Specific Activities, Including:<br><br>Dressing client, using toilet, personal hygiene, medication reminders, preparing meals for client, making bed for client, washing clothes for client, sweeping floor after meals for client, cleaning dishes after meal prep for client, errands, transport, laundry for client, cleaning the bathtub after a shower/bath for client. | B<br>Total Of All Hours<br><br>(should be the sum of columns A,B,C,D) | For Office Use<br><br>(% Calculated as value of column A divided by the resulting value of column B minus D minus C) |
|---|---|---|---|---|---|---|---|
| 11-13-16 | SUN | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 11-14-16 | MON | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 11-15-16 | TUES | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 11-16-17 | WED | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 11-17-17 | THURS | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 11-18-16 | FRI | 1.5 | 8 | 1+3(Meal) | 10.5 | 24 | |
| 11-19-16 | SAT | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |

DILIGENT0035

CONFIDENTIAL

ComForcare Home Care Services PCA Timesheet
155 Main St., Suite #303, Danbury CT 06810
Ph. (203)702-1181, Fax (203)702-4458

1602

| Client Full Name: (Please Print) | Jacqueline Smith Cauthen | | | Client EMS #: | | | |
|---|---|---|---|---|---|---|---|
| Week Ending Date: (Always Saturday) | 11-19-2016 | | | Employee Full Name: (Please Print) Pinkie Bena Maphutha | | | |
| | SUN | MON | TUES | WED | THURS | FRI | SAT |
| DATES → | 11-20-16 | 11-21-16 | 11-22-16 | 11-23-16 | 11-24-16 | 11-25-16 | 11-26-16 |
| TIME IN | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm |
| TIME OUT | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm |
| DAILY TOTAL | 24 | 24 | 24 | 24 | 24 | 24 | 24 |

| ADL/IADL CODES | R - ROUTINE | F - FREQUENT | | I - INTERMITTENT | | | |
|---|---|---|---|---|---|---|---|
| ADLs | | | | | | | |
| Bathing | R | R | R | R | R | R | R |
| Dressing | R | R | R | R | R | R | R |
| Eating/Feeding | R | R | R | R | R | R | R |
| Grooming | R | R | R | R | R | R | R |
| Mobility/Walking | R | R | R | R | R | R | R |
| Toileting/Bowel and bladder care | R | R | R | | | R | R |
| Transferring | R | R | R | | | R | R |
| IADLs | | | | | | | |
| Cueing/Reminders for self medication administration | R | | | | | R | R |
| Housekeeping | R | R | R | R | R | R | R |
| Laundry | ( | | | | | | |
| Meal Preparation/Planning | R | R | R | | R | R | R |
| Shopping | | | | | | | |
| Other Walk the Dog | | R | | R | R | R | R |
| Accompany to appointments | | | | | | | R |
| Conversation | R | R | R | R | | R | R |
| Errands | | | | | | | |
| Mail/Correspondence | | | | | | | |
| Telephone Use | | | | | | | |
| Caregiver Initial Daily ---→ | PM | PM | PM | PM | PM | PM | PM |

| CLIENT FULL SIGNATURE (or Legal Rep.) (DAILY): Or "client unable to sign today" | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | MILEAGE: | WEEKLY TOTAL: | |

*Client signature authorizes the billing of the above hours and that the hours are accurate. ***Please do not authorize in advance of service. - ccci

Employee Signature: PMat          Date: 11-26-2016

ComForcare Homecare Services
Live-In Services
Hourly Log

Client Name: Jacqueline Smith-Coughlin

Caregiver Name: PINKIE-BGAN MARTHUITIa

Caregiver Signature: _____

Please estimate daily hours.
This will not affect your pay.
Complete this in addition in your flowsheet.
Total hours listed here, typically will equal 24 hours.
Your client's signature is not required.

| Date | Day of the Week | A. General Household Work (This time should be kept to approximately 1.5 hrs a day. This work includes vacuuming, dusting furniture, washing floors & windows, cleaning refrigerator and oven) | B. Total Hours Of Sleeping Time (Should be 8 but no less than 5) | C. Total Hours Of Break-Time (Must be at least 30 minutes of uninterrupted time to be a break) | D. Remaining Time With Client Specific Activities, Including: (Dressing client, using toilet, personal hygiene, medication reminders, preparing meals for client, making bed for client, washing clothes for client, sweeping floor after meals for client, cleaning dishes after meal prep for client, errands, transport, laundry for client, cleaning the bathtub after a shower/bath for client) | E. Total Of All Hours (should be the sum of columns A,B,C,D) | For Office Use (% Calculated as value of column A divided by the running value of column B minus B minus C.) |
|---|---|---|---|---|---|---|---|
| 11-20-16 | SUN | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 11-21-16 | MON | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 11-22-16 | TUES | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 11-23-16 | WED | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 11-24-16 | THURS | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 11-25-16 | FRI | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 11-26-16 | SAT | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |

CONFIDENTIAL

DILIGENT0037

**ComForcare Home Care Services PCA Timesheet**
155 Main St., Suite #903, Danbury CT 06810
Ph. (203)702-1181, Fax (203)702-4458

| Client Full Name: (Please Print) | Jaque Smith Coughline | | Client EMS #: | | | | |
|---|---|---|---|---|---|---|---|
| Week Ending Date: (Always Saturday) | 12-10-2016 | | Employee Full Name: (Please Print) Pinkie B. Maphwma | | | | |

| | SUN | MON | TUES | WED | THURS | FRI | SAT |
|---|---|---|---|---|---|---|---|
| **DATES →** | 12-11-16 | 12-12-16 | 12-13-16 | 12-14-16 | 12-15-16 | 12-16-16 | 12-17-2016 |
| **TIME IN** | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm |
| **TIME OUT** | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm |
| **DAILY TOTAL** | 24 | 24 | 24 | 24 | 24 | 24 | 24 |

**ADL/IADL CODES**     R - ROUTINE       F - FREQUENT       I - INTERMITTENT

| ADLs | | | | | | | |
|---|---|---|---|---|---|---|---|
| Bathing | R | R | F | R | R | R | R |
| Dressing | R | R | R | R | R | R | R |
| Eating/Feeding | R | R | R | R | R | R | R |
| Grooming | R | R | F | R | R | R | R |
| Mobility/Walking | R | R | R | R | R | R | R |
| Toileting/Bowel and bladder care | R | R | R | R | R | R | R |
| Transferring | R | R | R | R | R | R | R |
| **IADLs** | | | | | | | |
| Cueing/Reminders for self medication administration | R | R | R | R | R | R | R |
| Housekeeping | R | R | R | R | R | R | R |
| Laundry | | | | | I | | |
| Meal Preparation/Planning | R | R | R | R | R | R | R |
| Shopping | | | | | | | |
| Other  walking the Dog | | | R | R | R | R | R |
| Accompany to appointments | | R | | | | | |
| Conversation | R | R | R | R | | R | R |
| Errands | | | | | | | |
| Mail/Correspondence | | | | | | | |
| Telephone Use | | | | | | | |

| Caregiver Initial Daily ---→ | PM | PM | PM | PM | PM | PM | PM |
|---|---|---|---|---|---|---|---|
| **CLIENT FULL SIGNATURE** (or Legal Rep.) (DAILY): Or "client unable to sign today" | | | | | | | |

| MILEAGE: | WEEKLY | TOTAL: |
|---|---|---|

*Client signature authorizes the billing of the above hours and that the hours are accurate. ***Please do not authorize in advance of service. - cool

Employee Signature: _PMaph_     Date: 12-17-2016

CONFIDENTIAL

ComForcare Homecare Services
Live-In Services
Hourly Log

Please estimate daily hours.
This will not affect your pay.
Complete this in addition in your flowsheet.
Total hours listed here, typically will equal 24 hours.
Your client's signature is not required.

Client Name Jacqueline Smith Cousbil

Caregiver Name Pinkie Berna Maphutla

Caregiver Signature PMON

| Date | Day of the Week | A General Household Work | B Total Hours Of Sleeping Time | C Total Hours Of Break-Time | D Remaining Time With Client Specific Activities, Including: | B Total Of All Hours | For Office Use |
|------|------|------|------|------|------|------|------|
| | | This time should to input to approximately 1.5 hrs a day. This work includes vacuuming, dusting furniture, washing floors & windows, cleaning refrigerator and ovens | Should be 8 but no less than 5 | Must be at least 30 minutes of uninterrupted time to be a break | Dressing client, using toilet, personal hygiene, medication reminders, preparing meals for client, making bed for client, washing clothes for client, sweeping floor after meals for client, cleaning dishes after meal prep for client, errands, transport, laundry for client, cleaning the bathtub after a shower/bath for client. | (should be the sum of columns A,B,C,D) | (% Calculated as value of column A divided by the resulting value of column B minus B minus C) |
| 12-11-16 | SUN | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 12-12-16 | MON | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 12-13-16 | TUES | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 12-14-16 | WED | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 12-15-16 | THURS | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 12-16-16 | FRI | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 12-17-16 | SAT | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |

DILIGENT0039

CONFIDENTIAL

**ComForcare Home Care Services PCA Timesheet**
155 Main St., Suite #303, Danbury CT 06810
Ph. (203)702-1181, Fax (203)702-4458

| Client Full Name: (Please Print) | Jacque Smith Coughline | | | | Client EMS #: | | |
|---|---|---|---|---|---|---|---|
| Week Ending Date: (Always Saturday) | 12-37-2 | | | | Employee Full Name: (Please Print) Pinkie B Bk.Lwthq | | |

| | SUN | MON | TUES | WED | THURS | FRI | SAT |
|---|---|---|---|---|---|---|---|
| DATES → | 12-18-16 | 12-19-16 | 12-20-16 | 12-21-16 | 12-22-16 | | |
| TIME IN | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | am/pm | am/pm |
| TIME OUT | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | am/pm | am/pm |
| DAILY TOTAL | 24 | 24 | 24 | 24 | 24 | | |
| ADL/IADL CODES | R - ROUTINE | F - FREQUENT | I - INTERMITTENT | | | | |
| ADLs | | | | | | | |
| Bathing | R | R | R | R· | R | | |
| Dressing | R | R | R | R | R | | |
| Eating/Feeding | R | R | R | R | R | | |
| Grooming | R | R | R | R | R | | |
| Mobility/Walking | R | R | R | R | R | | |
| Toileting/Bowel and bladder care | R | R | R | R | R | | |
| Transferring | R | R | R | R | | | |
| IADLs | | | | | | | |
| Cueing/Reminders for self medication administration | R | R | R | R | R | | |
| Housekeeping | R | R | | R | R | | |
| Laundry | \ | | | | | | |
| Meal Preparation/Planning | R | R | R | | R | | |
| Shopping | | | | | | | |
| Other Walking the Dog | R | R | R | R | R | | |
| Accompany to appointments | | | | | | | |
| Conversation | R | R | R | R | | | |
| Errands | | | | | | | |
| Mail/Correspondence | | | | | | | |
| Telephone Use | | | | | | | |
| Caregiver Initial Daily ---> | PM | PM | PM | PM | PM | | |

CLIENT FULL SIGNATURE *(or Legal Rep.)* *(DAILY):* Or "client unable to sign today"

MILEAGE:

WEEKLY TOTAL:

*Client signature authorizes the billing of the above hours and that the hours are accurate. ***Please do not authorize in advance of service. - coci

Employee Signature: PMak    Date: 12-24-2016

CONFIDENTIAL

DILIGENT0040

ComForcare Homecare Services
Live-In Services
Hourly Log

Please estimate daily hours.
This will not affect your pay.
Complete this in addition in your flowsheet.
Total hours listed here, typically will equal 24 hours.
Your client's signature is not required.

Client Name Jacqueline Smith Coughline

Caregiver Name Pinkie Bena Maphutha

Caregiver Signature Pmap

| Date | Day of the Week | A General Household Work  This time should be kept to approximately 1.5 hrs a day.  This work includes vacuuming, dusting furniture, washing floors & windows, cleaning refrigerators and ovens | B Total Hours Of Sleeping Time  Should be 8 but no less than 5 | C Total Hours Of Break-Time  Must be at least 30 minutes of uninterrupted time to be a break. | D Remaining Time With Client Specific Activities, including:  Dressing client, using toilet, personal hygiene, medication reminders, preparing meals for client, making bed for client, washing clothes for client, sweeping floor after meals for the client, cleaning dishes after meal prep for client, errands, transport, laundry for client, cleaning the bathtub after a shower/bath for client. | B Total Of All Hours  (should be the sum of columns A,B,C,D) | For Office Use  (% Calculated as value of column A divided by the resulting value of column B minus C) |
|---|---|---|---|---|---|---|---|
| 12-19-16 | SUN | 1.5 | 8 | 1 +3 (meal) | 10.5 | 24 | |
| 12-19-16 | MON | 1.5 | 8 | 1+3 (meal) | 10.5 | 24 | |
| 12-20-16 | TUE | 1.5 | 8 | 1+3 (meal) | 10.5 | 24 | |
| 12-21-16 | WED | 1.5 | 8 | 1+3 (meal) | 10.5 | 24 | |
| 12-22-16 | THUE | 1.5 | 8 | 1+3 (meal) | 10.5 | 24 | |
| | | | | | | 24 | |
| | | | | | | 24 | |

CONFIDENTIAL

DILIGENT0041

**ComForcare Home Care Services PCA Timesheet**
155 Main St., Suite #303, Danbury CT 06810
Ph. (203)702-1181, Fax (203)702-4458

**Client Full Name:** (Please Print) Jacque Smith Coughlie

**Client EMS #:**

**Week Ending Date:** (Always Saturday) 1-7-2017

**Employee Full Name:** (Please Print) Pinkie Bena Maphwutla

| | SUN | MON | TUES | WED | THURS | FRI | SAT |
|---|---|---|---|---|---|---|---|
| **DATES →** | 1-8-17 | 1-9-17 | 1-10-17 | 1-11-17 | 1-12-17 | 1-13-17 | 1-14-2017 |
| **TIME IN** | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm |
| **TIME OUT** | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm |
| **DAILY TOTAL** | 24 | 24 | 24 | 24 | 24 | 24 | 24 |

**ADL/IADL CODES**   R - ROUTINE   F - FREQUENT   I - INTERMITTENT

| ADLs | | | | | | | |
|---|---|---|---|---|---|---|---|
| Bathing | R | R | R | R | R | R | R |
| Dressing | R | R | R | R | R | R | R |
| Eating/Feeding | R | R | R | R | R | R | R |
| Grooming | R | R | R | R | R | R | R |
| Mobility/Walking | R | R | R | R | R | R | R |
| Toileting/Bowel and bladder care | R | R | R | R | R | R | R |
| Transferring | R | R | R | R | R | R | R |
| **IADLs** | | | | | | | |
| Cueing/Reminders for self medication administration | R | R | R | R | | R | R |
| Housekeeping | R | R | | R | R | R | R |
| Laundry | | | | | | | |
| Meal Preparation/Planning | R | R | R | R | R | R | R |
| Shopping | | | | | | | |
| Other Walk the Dog | R | R | R | R | R | R | R |
| Accompany to appointments | | | | | | | |
| Conversation | R | R | R | R | | R | R |
| Errands | | | | | | | |
| Mail/Correspondence | | | | | | | |
| Telephone Use | | | | | | | |
| **Caregiver Initial Daily --→** | PM | PM | PM | PM | PM | PM | PM |
| **CLIENT FULL SIGNATURE** (or Legal Rep.) (DAILY): Or "client unable to sign today" | | | | | | | |

| MILEAGE: | WEEKLY | TOTAL: |
|---|---|---|

*Client signature authorizes the billing of the above hours and that the hours are accurate. ***Please do not authorize in advance of service. - cool

**Employee Signature:** PMah    **Date:** 1-7-2017

ComForcare Homecare Services
Live-In Services
Hourly Log

Please estimate daily hours.
This will not affect your pay.
Complete this in addition in your flowsheet.
Total hours listed here, typically will equal 24 hours.
Your client's signature is not required.

Client Name: Jacqueline Smith Coughline
Caregiver Name: Pakie Bena Makphutha
Caregiver Signature: PWak

| Date | Day of the Week | A General Household Work (This time should be kept to approximately 1.5 hrs a day. This work includes vacuuming, dusting furniture, washing floors & windows, cleaning refrigerator and ovens) | B Total Hours Of Sleeping Time (Should be 8 but no less than 5) | C Total Hours Of Break-Time (Must be at least 30 minutes of uninterrupted time to be a break.) | D Remaining Time With Client Specific Activities, Including (Dressing client, using toilet, personal hygiene, medication reminders, preparing meals for client, making bed for client, washing clothes for client, sweeping floor after meals for client, cleaning dishes after meal prep for client, errands, transport, laundry for client, cleaning the bathtub after a shower/bath for client.) | B Total Of All Hours (should be the sum of columns A,B,C,D) | For Office Use (% Calculated as value of column A divided by the resulting value of column B minus C) |
|---|---|---|---|---|---|---|---|
| 1-8-17 | SUN | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 1-9-17 | MON | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 1-10-17 | TUE | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 1-11-17 | WED | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 1-12-17 | THU | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 1-13-17 | FRI | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 1-14-17 | SAT | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |

DILIGENT0043

CONFIDENTIAL

**ComForcare Home Care Services PCA Timesheet**
155 Main St., Suite #303, Danbury CT 06810
Ph. (203)702-1181, Fax (203)702-4458

Client Full Name: Jacque Smith Loughline
(Please Print)

Client EMS #:

Week Ending Date: 1-14-2017
(Always Saturday)

Employee Full Name: Pinkie B. Maphuthq
(Please Print)

| | SUN | MON | TUES | WED | THURS | FRI | SAT |
|---|---|---|---|---|---|---|---|
| DATES → | 1-15-17 | 1-16-17 | 1-17-17 | 1-18-17 | 1-19-17 | 1-20-17 | 1-21-17 |
| TIME IN | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm |
| TIME OUT | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm | 6 am/pm |
| DAILY TOTAL | | | | | | | |

ADL/IADL CODES    R - ROUTINE    F - FREQUENT    I - INTERMITTENT

| ADLs | | | | | | | |
|---|---|---|---|---|---|---|---|
| Bathing | R | R | R | R | R | R | R |
| Dressing | R | R | R | R | R | R | R |
| Eating/Feeding | R | R | R | R | R | R | R |
| Grooming | R | R | R | R | R | R | R |
| Mobility/Walking | R | R | R | R | R | R | R |
| Toileting/Bowel and bladder care | R | R | R | R | R | R | R |
| Transferring | R | | R | | | R | R |
| IADLs | | | | | | | |
| Cueing/Reminders for self medication administration | R | R | | R | R | R | R |
| Housekeeping | R | R | | R | R | R | R |
| Laundry | | | | I | | | |
| Meal Preparation/Planning | R | | R | R | R | R | R |
| Shopping | | | | | | | |
| Other walking the dog | | | | R | R | R | R |
| Accompany to appointments | | | | | | | |
| Conversation | R | R | R | R | | R | R |
| Errands | | | | | | | |
| Mail/Correspondence | | | | | | | |
| Telephone Use | | | | | | | |
| | | | | | | | |
| Caregiver Initial Daily → | PM | PM | PM | PM | PM | PM | PM |

| CLIENT FULL SIGNATURE (or Legal Rep.) (DAILY): Or "client unable to sign today" | | | | | | | |
|---|---|---|---|---|---|---|---|

| | | | MILEAGE: | | WEEKLY | TOTAL: |
|---|---|---|---|---|---|---|

*Client signature authorizes the billing of the above hours and that the hours are accurate. ***Please do not authorize in advance of service. - ceci

Employee Signature: P MaR

Date: 1-14-2017

CONFIDENTIAL

DILIGENT0044

ComForcare Homecare Services
Live-In Services
Hourly Log

Please estimate daily hours.
This will not affect your pay.
Complete this in addition in your flowsheet.
Total hours listed here, typically will equal 24 hours.
Your client's signature is not required.

Client Name _Jacqueline Smith Coughlne_
Caregiver Name _Piskie  Bena Maphutha_
Caregiver Signature _pm c/v_

| Date | Day of the Week | A General Household Work (This time should be kept to approximately 1.5 hrs a day. This work includes vacuuming, dusting furniture, washing floors & windows, cleaning refrigerator and oven) | B Total Hours Of Sleeping Time (Should be 8 but no less than 5) | C Total Hours Of Break-Time (Must be at least 30 minutes of uninterrupted time to be a break) | D Requiring Time With Client Specific Activities, Including (Dressing client, using toilet, personal hygiene, medication reminders, preparing meals for client, making bed for client, washing clothes for client, sweeping floor after meals for client, cleaning dishes after meal prep for client, errands, transport, laundry for client, checking the bath/shower/bath for client) | B Total Of All Hours (should be the sum of columns A,B,C,D) | For Office Use (% Calculated as value of column A divided by the resulting value of column B minus B minus C) |
|---|---|---|---|---|---|---|---|
| 1-15-17 | SUN | 1.5 | 8 | 1+3(meal) | 10.5 | 24 | |
| 1-16-17 | MON | 1.5 | 8 | 1+3(meal) | 10·5 | 24 | |
| 1-17-17 | TUE | 1.5 | 8 | 1+3(meal) | 10·5 | 24 | |
| 1-18-17 | WED | 1.5 | 8 | 1+3(meal) | 10·5 | 24 | |
| 1-19-17 | THURS | 1.5 | 8 | 1+3(meal) | 10·5 | 24 | |
| 1-20-17 | FRI | 1.5 | 9 | 1+3(meal) | 10·5 | 24 | |
| 1-21-17 | SAT | 1.5 | 9 | 1+3(meal) | 10·5 | 24 | |

CONFIDENTIAL

DILIGENT0045



DILIGENT0046



CONFIDENTIAL

DILIGENT0047





CONFIDENTIAL

DILIGENT0049

Exhibit C

REVISED JOINT GUIDANCE ISSUED March 31, 2016 BY DSS AND CTDOL

REGARDING

USDOL's HOME CARE FINAL RULE

The United States Labor Department ("USDOL") announced a final rule (78 FR 60454, 10/1/13), which was originally effective January 1, 2015, and was stayed pending the outcome of a lawsuit filed by the Home Care Association of America in federal court.  The US Court of Appeals for the D.C. Circuit ultimately upheld the rule and it became effective on October 13, 2015.  USDOL began enforcement on November 12, 2015.  The rule amends regulations regarding domestic service employment.  The purpose and effect of the amendments are to extend Fair Labor Standards Act ("FLSA") protections (specifically, minimum wage and overtime) to most home care workers. It is important to note that  the Connecticut Minimum Wage law applies to individuals in domestic service employment as defined in the regulations of the Federal Fair Labor Standards Act. For this reason, it is necessary to be familiar with the federal regulations and to refer to  www.dol.gov/whd/homecare for compliance assistance.  **However, Connecticut's minimum wage of $9.60 per hour effective 1/1/16, and $10.10 per hour effective 1/1/17, would apply.**

This bulletin provides guidance regarding the impact of the federal FLSA on the provision of agency-based live-in services to recipients of Connecticut Medicaid Home and Community-Based waivers. This guidance applies exclusively to third-party agency employers providing live-in services and not to consumer/family employers who directly hire such employees without assistance from a third-party agency employer.

**Credit for Housing and Food Costs:** USDOL guidance confirms that it is permissible for employers to credit the actual amounts of the cost of housing and food provided to the PCA by the client toward a live-in's wages.  Please note that the employer must keep track of the actual costs of housing and food as noted below.  Housing and food costs may, however, only be credited toward  straight time wages rather than as part of any additional overtime compensation owed, as reflected in the examples below. In addition to payment for the straight time, the live-in is entitled to time and a half for all hours worked after 40.

The first permissible credit is the housing credit.  We strongly recommend that all Agency employers providing live-in services review Field Assistance Bulletin No. 2015-1 (FAB No. 2015-1) on the US DOL website.  The FAB 2015-1 provides detailed guidance on when the credit may be taken for lodging provided to employees.

An employer who wishes to claim the section 3(m) credit for lodging must ensure that the following five requirements are met:

    1. Lodging must be regularly provided by the employer or similar employers;

**CONFIDENTIAL**



**DILIGENT000019**

2. The employee must voluntarily accept the lodging;

3. The lodging must be furnished in compliance with applicable federal, state, or local laws;

4. The lodging must primarily benefit the employee, rather than the employer; and

5. The employer must maintain accurate records of the (actual) costs incurred in the furnishing of the lodging.

*See* FAB 2015-1.

**USDOL has indicated that housing costs must be calculated on an individual basis, and are dependent on actual housing-related expenditures.** Pursuant to the FLSA recordkeeping regulations, in order to take a wage credit under section 3(m), an employer must maintain accurate records of the (actual) costs incurred in furnishing lodging to the employee. See 29 C.F.R. § 516.27(a); see also 29 C.F.R. § 552.100(d).

DSS has provided the Access Agencies with a worksheet for the purpose of keeping accurate records of the (actual) costs the client incurs in furnishing lodging to an employee. The involved Access Agency Care Manager will use the worksheet to calculate the credit for housing costs and will provide this information to the involved agency. The agency may then apply this amount to the live-in's minimum wage for his or her regular time. *Sample calculation for purposes of illustration only:* If the PCA's share of the client's housing costs is $100 per week, that amount will be divided by all straight-time hours, e.g., 40, resulting in an amount of $2.50 per hour that may be applied toward the minimum wage for the straight time.

The second permissible credit is the food credit. The USDOL has indicated that credits for food must also be calculated on an individual basis. If the client provides food for the caregiver, a credit may be taken for the actual cost of providing food. The agency may calculate the hourly wage payment by subtracting the actual costs of housing and actual cost of providing food from the minimum wage of $9.60 (hourly wage).

*Sample calculation for purposes of illustration only:* If the PCA's share of food is $75 per week, that amount would be divided by all straight time hours resulting in an amount of $1.75 per hour that may be applied toward the minimum wage for straight time.

The *sample calculation* would be as follows: $9.60(minimum wage) - $2.50 (lodging credit) – $1.75 (food credit) =$5.35. So, the payment for 40 hours of straight time would be $214.

All agencies are reminded that the credit for lodging and food may only be taken for the **actual cost of lodging and food**. With respect to *live-in domestic service employees only*, an employer that does not provide such records may claim a certain amount—up to seven and one-half times the federal statutory minimum hourly wage for each week lodging is furnished, currently $54.38 (7.5 x $7.25)—toward wages rather than the reasonable cost or fair value of the housing provided.

**Credits for Hours Not Worked:** Agencies have posed questions regarding the permissibility of deducting time not worked by a live-in from that individual's compensable time. Pursuant to 29 CFR 552.102, "the employee and the employer may exclude, by agreement between themselves, the amount of sleeping

time, meal time and other periods of complete freedom from all duties when the employee may either leave the premises or stay on the premises for purely personal pursuits." Nevertheless, all hours actually worked must be compensated, such as where the normal sleeping period or normal meal period is interrupted by a call to duty. Although the parties may have an agreement that sets forth the parties' expectations regarding the normal schedule of work time, and the parties may agree to exclude sleep, meal and other relief periods from hours worked, that agreement does not control the compensation due each week. The hours worked must be compensated.

Information available on the USDOL website, www.dol.gov/whd/homecare, indicates that the employer and employee can agree to allow the employee to have up to 8 hours of sleep time, in which case the sleep time can be excluded form hours worked.  *See* 29 C.F.R. § 785.22. Uninterrupted sleep time may be deducted from the live-in's time on site in a client's home, initially resulting in a 16-hour work day. Any interruptions to sleep by a call to duty, however, must be paid, and if the employee does not sleep for 5 uninterrupted hours during a given night, no sleep time may be deducted.

*Sample calculation for purposes of illustration only:*  Again, continuing on the examples above, if we assume the PCA is a seven day per week live-in, if only the sleep time is deducted, the live-in is also entitled to 72 hours of overtime (16 hours/day x 7 days – 40 hours of straight time).  The overtime in this example is paid at the rate of $14.40 ($9.60 hourly wage x 1.5) per hour.

The amount of overtime due in this example is calculated as follows:  $14.40 x 72 = $1,036.80.

Therefore, the total pay due to the live–in caregiver in this continuing example is the straight time less the housing and food credits + overtime.

If we continue with the *sample calculation* from the previous page:  We would add $214 (wages for first 40 hours) + $1,036.80= $1,250.80.  Again, this is a *sample calculation for illustrative purposes only*. Agencies are reminded to use the *actual costs of lodging and food* when determining the amount of wages owed for straight time.

If additional time for meal periods and other duty free periods are excluded *by agreement* between the employee and employer <u>and the employee is actually able to use the anticipated meal and free time for the employee's own purposes</u>, such additional periods would be deducted from all hours worked including the straight time and overtime in excess of the regular 40 hours.

The DSS has reviewed its recently published rate for the live-in service, procedure code 1023Z. Effective 1/1/16 the Department will reimburse live-in service at a daily rate of $236.47.

Please contact Kathy Bruni, DSS Alternate Care Program Manager, with any questions or concerns at Kathy.a.bruni@ct.gov or 860-424-5177 or the CT DOL Wage and Workplace Standards Division at 860-263-6790.

# Exhibit D

# United States Department of Labor

## Wage and Hour Division

### Wage and Hour Division (WHD)

**U.S. Department of Labor**

Wage & Hour Division
Washington D.C. 20210

December 17, 2015

FIELD ASSISTANCE BULLETIN NO. 2015-1

MEMORANDUM FOR:    REGIONAL ADMINISTRATORS
DISTRICT DIRECTORS

FROM:    Dr. David Weil
Wage and Hour Administrator

SUBJECT:    Credit toward Wages under Section 3(m) of the FLSA for Lodging Provided to Employees

This memorandum provides guidance to Wage and Hour Division (WHD) field staff regarding credit toward wages under section 3(m) of the Fair Labor Standards Act (FLSA) for lodging provided to employees. Section 3(m) of the FLSA allows an employer to, under certain circumstances, count as wages "the reasonable cost … to the employer of furnishing such employee with board, lodging, or other facilities." 29 U.S.C. § 203(m). This memorandum explains the requirements for taking the credit, as well as the proper method of accounting for it in calculating wages, when an employer provides lodging to employee.

Although the topics addressed in this memorandum apply broadly, a number of examples specific to live-in domestic service employees appear below because WHD anticipates that many employers of home care workers will make use of the section 3(m) credit now that Federal minimum wage and overtime protections apply to many such workers pursuant to the Home Care Final Rule, Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60,454 (Oct. 1, 2013).[1] WHD emphasizes, however, that Section 3(m) applies in a variety of contexts, and nothing in this FAB is meant to limit an employer's use of Section 3(m) under other circumstances in any way.

**Discussion**

Section 3(m) provides, in relevant part, that:

"Wage" paid to any employee includes the reasonable cost, as determined by the Administrator, to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees: *Provided*, That the cost of board, lodging, or other facilities shall not be included as a part of the wage paid to any employee to the extent it is excluded therefrom under the terms of a bona fide collective-bargaining agreement applicable to the particular employee: *Provided further*, That the Secretary is authorized to determine the fair value of such board, lodging, or other facilities for defined classes of employees and in defined areas, based on average cost to the employer or to groups of employers similarly situated, or average value to groups of employees, or other appropriate measures of fair value.

29 U.S.C. § 203(m). The question whether an employer may properly count the value of lodging as a part of an employee's wages can arise in a variety of contexts. For example, some farm workers live in employer-provided housing near the fields in which they work. Additionally, some domestic service workers, such as home care workers or nannies, live at the home in which they provide services.

A.    **Requirements for Claiming a Section 3(m) Credit**
Based on the Department's regulations and longstanding interpretation of section 3(m), an employer who wishes to claim the section 3(m) credit for lodging must ensure that the following five requirements are met:

1.    The lodging is regularly provided by the employer or similar employers;

2.    The employee voluntarily accepts the lodging;

3.    The lodging is furnished in compliance with applicable federal, state, or local law;

4.    The lodging is provided primarily for the benefit of the employee rather than the employer; and

5.    The employer maintains accurate records of the costs incurred in furnishing the lodging.
1.    **Lodging Regularly Provided by the Employer or Similar Employers**



PLAINTIFF'S EXHIBIT 9    11-4-19    PENGAD 800-631-6989

FIELD ASSISTANCE BULLETIN NO. 2015-1 - Wage and Hour Division (WHD) -U.S. Department of Labor                    9/25/18, 5:01 PM

Employers may take advantage of section 3(m) only if the lodging is "furnished regularly by the employer to his employees or if the same or similar facilities are customarily furnished by other employers engaged in the same or similar trade, business, or occupation in the same or similar communities." 29 C.F.R. § 531.31 (citing *Walling v. Alaska Pac. Consol. Mining Co.*, 152 F.2d 812 (9th Cir. 1945); Field Operations Handbook (FOH) § 30c02(a)).

Because live-in domestic service employees, for example, often reside at their employers' private homes without paying rent, this requirement is met for those workers. Similarly, agricultural workers are often provided housing during the harvest season by their employers, so this requirement is met for workers under those circumstances as well. Wage and Hour investigators (WHIs) will need to consider whether this requirement is met for other types of employees whose employers claim a section 3(m) credit based on the circumstances presented in the particular investigation.

2.  **Voluntary Acceptance**

    Employees must accept lodging voluntarily and without coercion in order for an employer to take advantage of section 3(m). 29 C.F.R. § 531.30; *see also* 552.100(b); Wage & Hour Opinion Letter WH 513 (Feb. 24, 1992).[2] WHD will normally consider the lodging as voluntarily accepted by the employee when living at or near the site of the work is necessary to performing the job. For example, this requirement is typically met when a live-in domestic service employee and the employer have an understanding that the employee will live on the premises as a condition of employment, or when an apartment complex provides a free apartment to the complex manager. *See* Wage & Hour Opinion Letter WH 513 (noting that "voluntary acceptance of a job can be construed as voluntary acceptance of the facilities only when the facilities are integral to performing the job (as with room and board for a live-in housekeeper and babysitter) and the employee understood this when accepting the job" (citing *Lopez v. Rodriguez*, 668 F.2d 1376 (D.C. Cir. 1981))); *see also Brock v. Carrion, Ltd.*, 332 F. Supp. 2d 1320, 1325 (E.D. Cal. 2004) (determining that lodging was accepted voluntarily where an apartment manager who lived on-site "does not actually assert that he was coerced" and had signed an employment agreement).[3] In other circumstances, WHIs should look for an indication, such as a written agreement, that the employee voluntarily agreed to live in a residence provided by the employer.

3.  **Compliance with Federal, State, and Local Laws**

    Employers may not include the cost of lodging as part of employees' wages if the lodging is "in violation of any Federal, State, or local laws, ordinance or prohibition." 29 C.F.R. § 531.31; *see also* FOH § 30c02(b). For example, the WHD will not allow a section 3(m) credit if the lodging provided does not have or has been denied a required occupancy permit or is not zoned for residential use. *See* FOH § 30c02(b). Similarly, courts have disallowed an employer's use of the section 3(m) credit in circumstances in which lodging was substandard or not compliant with law. *See, e.g., Soler v. G & U, Inc.*, 768 F. Supp. 452, 465-66 (S.D.N.Y. 1991) (holding that an employer could not take advantage of section 3(m) because migrant farm workers' camp was operated in violation of the relevant state permit due to overcrowding); *Osias v. Marc*, 700 F. Supp. 842, 845 (D. Md. 1988) ("Because the Department of Labor's investigative report found the housing to be seriously substandard, the employer may not credit the cost of furnishing the facilities against minimum wage obligations."); *Strong v. Williams*, No. 78-124-Civ-TG, 1980 WL 8134, at *4, 5 (M.D. Fla. April 22, 1980) (holding that an employer could not claim credit for housing provided to migrant farm workers when the employer was "not authorized to house migrant workers under 7 U.S.C. § 2044(a)(4)," the Federal Farm Labor Contractors Registration Act).

    WHIs should be aware of and look into any suggestions that employer-provided lodging is substandard such that its condition violates law.

4.  **Primary Beneficiary**

    An employer may not include the cost of lodging in an employee's wages unless the employee receives the primary benefit of the lodging. *See* 29 C.F.R. § 531.3(d)(1); *see also* FOH § 30c01(c); *Ramos-Barrientos v. Bland*, 661 F.3d 587, 595-98 (11th Cir. 2011) (accepting as consistent with statutory and regulatory texts the Secretary's position that lodging must primarily benefit the employee in order for a wage credit to be taken). Lodging is ordinarily presumed to be for the primary benefit and convenience of the employee. *See* FOH § 30c03(a)(2).[4] But this presumption is rebutted in circumstances in which lodging is "of little benefit to employees," such as "where an employer requires an employee to live on the employer's premises to meet some need of the employer." *Id; see also Soler v. G. & U., Inc.*, 833 F.2d 1104, 1110 (2d Cir. 1987) (explaining that "in appropriate circumstances, ... the presumption [that housing facilities may be included in wages under section 3(m)] is subject to challenge and rebuttal under the Regulation's balancing of benefits standard" and that if housing "is not a benefit running primarily to the employee, but rather a burden imposed upon the employee in furtherance of the employer's business," the housing may not be included in the employee's wage).[5]

    In particular, an employer may not claim the section 3(m) credit if "the employer requires the employee to leave an existing home and live on the employer's premises to be 'on call' to meet the needs of the employer." Wage & Hour Opinion Letter FLSA-1331 (Nov. 5, 1996); *see also Soler*, 833 F.2d at 1110-11 (holding that, among other factors, where workers "were not required to live on the farms as a condition of employment" and "were not 'on call,'" a determination that housing was for their benefit was not arbitrary and capricious).

    WHIs must consider the nature of the employment relationship and review the specific circumstances of each case to determine whether the lodging provided is primarily for the benefit of the employee. In the case of live-in domestic service employees, the Department recognizes that such employees typically are not working all of the time that they are on the premises of their employer and, ordinarily, they may at times engage in normal private pursuits, such as sleeping, eating, watching television, or reading a book and may leave the premises if they choose. 29 C.F.R. § 785.23; 29 C.F.R. § 552.102(a). There are, however, scenarios in the home care context in which an employee lives with a recipient of home care services in order to provide assistance throughout the day and/or night. Although the acuity level of the recipient of services does not determine whether the lodging is for the benefit of the employer or the employee, the

employer's demands on an employee's time is relevant to a determination of who primarily benefits from the employee's living at the residence. In other words, whether the employer has provided a live-in domestic service employee with specific time periods during which the employee is completely relieved from duty and which are long enough to enable the employee to use the time effectively for her own purposes (*i.e.*, has provided bona fide off-duty time) is one factor that may help determine who primarily benefits from the living arrangement and the lodging provided. For example, if a college student moved into the extra bedroom in a home owned by an 80-year-old man to provide him assistance with bathing and dressing for two hours in the mornings and preparing for sleep for one hour each night, but the student was otherwise free to spend her time as she pleased, those facts would weigh in favor of a finding that the lodging was primarily for the benefit of the employee. Similarly, if a property management company provided a plumber with a reduced-rent apartment in one of its complexes in exchange for the plumber being available two weekends per month for emergency calls, that factual scenario would weigh in favor of a finding that the lodging was provided primarily for the benefit of the employee.

As explained, however, if the employer's demands on an employee's time are so great or constant that the employee is working or is "engaged to wait" while on the premises, particularly overnight in the domestic service context, these facts would likely support a finding that the lodging is primarily for the benefit of the employer. Therefore, where an employee provides round-the-clock care, or if the employee's sleep or off-duty time is regularly interrupted to perform work for the employer, the lodging typically will be deemed as primarily for the benefit of the employer. In such circumstances, a section 3(m) credit for the lodging will not be permissible (recognizing, however, that circumstances can change over time and the credit may be available at a later date). These circumstances could arise, for example, in the case of a live-in nanny who tends to a baby throughout the night, a home health aide who serves an individual with a health condition that requires her to have constant assistance, including overnight, or a handyman who provides services to the apartment complex in which he resides who is constantly responding to emergency calls during his off-duty hours.

Whether the employer has provided an employee with adequate lodging is another factor that may help determine who primarily benefits from the living arrangement and the lodging provided. For example, if an employer provides an employee with private living quarters such as a separate bedroom that is furnished (with, for example, a bed, night table, and dresser) where the employee is able to leave her belongings and spend her off-duty time, this factor weighs in favor of a finding that the primary beneficiary of the lodging is the employee. Similarly, if the employer provides the employee with access to a kitchen and a private bathroom, such facilities support a finding that the lodging is primarily for the benefit of the employee (although such facilities are not a prerequisite for taking the section 3(m) credit). Such private quarters typically ensure that the employee is able to engage in normal private pursuits as she would in her own home. Even when the employee is provided private living quarters, however, lodging will typically be deemed primarily for the employer's benefit if the employee is "on-call" 24 hours a day or his or her sleep and off-duty time is regularly interrupted. If an employee is only provided a cot or couch to sleep on in a living space shared with the employer, this fact would suggest that the employee is not provided adequate off-duty time or is unable to use such time as she chooses and therefore that the lodging is primarily for the benefit of the employer.

5. **Accurate Recordkeeping**

*Records substantiating the cost of furnishing lodging.* Pursuant to the FLSA recordkeeping regulations, in order to take a wage credit under section 3(m), an employer must maintain accurate records of the costs incurred in furnishing lodging to the employee. *See* 29 C.F.R. § 516.27(a); *see also* 29 C.F.R. § 552.100(d); Wage & Hour Opinion Letter, 1994 WL 1004832 (June 1, 1994); FOH § 30c05(a). These records "shall include itemized accounts showing the nature and amount of any expenditures entering into the computation of the reasonable cost." 29 C.F.R. § 516.27(a)(1). For example, records could include proof of mortgage or rental payments and utility bills. If an employer does not provide records to support its claim of a section 3(m) lodging credit, the employer has not met this prerequisite for including lodging costs in employees' wages.[6]

With respect to live-in domestic service employees only, an employer that does not provide such records may claim a certain amount—up to seven and one-half times the statutory minimum hourly wage for each week lodging is furnished, currently $54.38 (7.5 x $7.25)—toward wages rather than the reasonable cost or fair value of the housing provided. 29 C.F.R. § 552.100(d).

*Records regarding wage calculations.* The Department's regulations require an employer to keep records showing section 3(m) additions to or deductions from wages if those additions or deductions affect the total cash wages owed. *See* 29 C.F.R. § 516.27(b). Specifically, if because of a section 3(m) credit, an employee receives less in cash wages than the minimum wage for each hour worked in the workweek, the employer "shall maintain records showing on a workweek basis those additions to or deductions from wages." *Id.* An employer must also maintain such records if an employee is owed overtime in a workweek and the employer has taken a section 3(m) credit. *Id.*

A number of courts have denied employers' attempts to claim a section 3(m) credit in circumstances in which those employers have not maintained proper records of costs or wage calculations. *See, e.g., Caro-Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1514 (11th Cir. 1993) (reversing a district court's dismissal of workers' claims of minimum wage because deductions for the cost of housing and utilities are impermissible when employer has failed to comply with the recordkeeping provisions of the FLSA and thus cannot substantiate the alleged reasonable cost of the housing provided (citing *Marshall v. DeBord*, No. 77-106-C, 1978 WL 1705 (E.D. Okla. July 27, 1978))); *Donovan v. Williams Chem. Co.*, 682 F.2d 185, 189-90 (9th Cir. 1982) (reversing a district court's allowance of a section 3(m) credit for housing because "[t]he employer has the obligation, under the regulations, to keep records concerning costs" and that burden does not shift in the absence of evidence of the cost of the housing (citing *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468 (11th Cir. 1982))); *Chao v. Min Fang Yang*, No. 05–2563, 2007 WL 7209596, at *6 (W.D. Tenn. Aug. 13, 2007) (prohibiting employer from taking a section 3(m) credit where the employer "failed to make or keep records as required by 29 C.F.R. § 516.27 with respect to the cost of providing meals and lodging, or the requirement of maintaining records of any deductions claimed on a weekly basis"); *Carrion, LTD.*, 332

F. Supp. 2d at 1326-27 (holding that an employer could not use section 3(m) to offset backwages owed for FLSA violations because the employer failed to produce documentation demonstrating the cost of providing employee with lodging, and explaining that an agreement to charge employees a certain amount of rent did not satisfy this requirement).

B. **Collective Bargaining Agreements**

An employer may not include in an employee's wage the cost of lodging "to the extent it is excluded therefrom under the terms of a bona fide collective bargaining agreement [(CBA)] applicable to the particular employee." 29 C.F.R. § 531.6(a); see also 29 U.S.C. § 203(m); FOH § 30c01(b). The determination of whether a CBA contains an exclusion of the cost of lodging that would otherwise qualify for a section 3(m) credit "will be based upon the written provisions" of the CBA. FOH § 30c01(b).

In the course of an investigation, the WHI should determine whether the employee is a member of a union or subject to a CBA. For example, some live-in home care workers are parties to CBAs with the State administering the Medicaid-funded program through which they are employed. If so, the WHI should obtain a copy of the CBA to determine whether it prohibits the employer from claiming a section 3(m) lodging credit.

C. **Application of a Section 3(m) Credit**

If an employer satisfies the five requirements for claiming the section 3(m) credit and the value of the facilities furnished is not excluded from wages pursuant to a CBA, the amount claimed must comply with statutory and regulatory guidelines, and the employee's wages must be properly calculated.

D. **Reasonable Cost or Fair Value**

The section 3(m) credit may not exceed the "reasonable cost" or "fair value" of the facilities furnished, whichever is less. 29 U.S.C. § 203(m); FOH § 30c01(a).

*Reasonable cost.* In this context, "reasonable cost" is "not more than the actual cost to the employer of the board, lodging, or other facilities customarily furnished by him to his employees." 29 C.F.R. § 531.3(a); see also FOH § 30c05(a). In other words, "reasonable cost" "does not include a profit to the employer or to any affiliated person." 29 C.F.R. § 531.3(b).[7] The actual cost to an employer of providing lodging to such a worker could be, for example, a portion of the monthly mortgage or rental payment as well as utility payments. See, e.g., FOH § 30c06(d)(2) ("When the employer leases a property from another person, the amount of rent paid by the employer to the other person is considered part of the 'reasonable cost' provided that the rent charged provides no profit for the employer, directly or indirectly.").[8]

The source of the funds the employer uses to provide the property is not relevant. The actual cost an employer pays may include money from the employer's savings or income and/or other funds provided to the employer, such as public assistance provided to certain individuals who employs home care workers. For purposes of calculating a section 3(m) credit, it is significant only that an employer, rather than the employee or another party that is not an employer, pays for the housing, not how the employer obtained the funds for such payments.

The portion of the cost of the residence in which an employee lives that may be counted as part of wages must be a reasonable approximation of the worker's share of the housing. See FOH § 30c06(d)(3) (explaining that the cost of lodging is to be divided among the employees living in a particular facility based on the amount of space provided to each employee). There is no formula for determining the appropriate fraction of the mortgage, rental, or other costs of the lodging that applies to a particular employee; instead, the employer or WHI must take into account the specific circumstances. For example, in a large house in which a family of five and a home care worker reside, the amount might most appropriately be determined based on the ratio of the square footage of the employee's bedroom to the square footage of the entire house. On the other hand, in an apartment shared by a recipient of home care services and a paid roommate, where the two individuals have equal use of the kitchen and common living spaces, the appropriate amount of a section 3(m) credit might be half of the rental cost of the unit. Similarly, if three agricultural workers are sharing a small cottage provided by the employer, then the appropriate amount of a section 3(m) credit that could properly be counted toward each employee's wages would likely only be one-third of the cost of the cottage.

Additionally, reasonable cost is to be calculated on a workweek-by-workweek basis so it can be added to cash wages for purposes of assessing whether the employer's minimum wage obligation has been met and determining the regular rate of pay upon which any overtime compensation due must be calculated, as described below. See FOH § 30c06(d)(3) (explaining that it is necessary to determine the "weekly reasonable cost"). The weekly reasonable cost can be calculated based on a monthly mortgage or rental amount by multiplying the monthly amount by 12 and dividing by 52. As to costs that vary over time, such as utility bills, a WHI should consider the specific costs for the time period covered in an investigation, based on the employer's records, although the WHI may in his or her discretion use (or accept an employer's use of) average amounts, if the approximation is reasonable.

The employer bears the burden of establishing, with records, the reasonable cost of lodging. 29 C.F.R. § 516.27; FOH § 30c05(a). Records of mortgage payments, a rental agreement and records of rent checks, or utility bills, for example, suffice as bases for actual cost calculations. In addition, records regarding sources of public assistance to the employer used to pay for housing, such as records regarding Housing Choice Vouchers, may be among the records used to fulfill this requirement. As noted above, an employer of a live-in domestic service employee that does not provide records is subject to an exception to this general rule: the employer may claim up to seven and one-half times the statutory minimum hourly wage, currently $7.25, for each week lodging is furnished toward wages. 29 C.F.R. § 552.100(d). In other words, in the absence of records, the employer may credit for lodging no more than $54.38 (7.5 x $7.25) per week to the wages if the employee is a live-in domestic service employee.

*Fair value.* Section 3(m) of the FLSA gives the Secretary authority to determine the "fair value" of lodging for purposes of an employer's claiming the section 3(m) credit. 29 C.F.R. § 531.2(a); FOH § 30c01(a). If the actual cost to the employer exceeds the rental value of the lodging, 29 C.F.R. § 531.3(c); FOH § 30c06(c), or the employer otherwise establishes a "reasonable cost" that "appears to be excessive in relation to the facilities furnished," FOH § 30c01(a), the employer may only count the lower fair value of the lodging toward wages.

As with assessments of reasonable cost, there is no specific formula for determining fair value. WHIs may approximate the fair value of lodging by considering average rental prices in the area for similar homes. Investigators may estimate these amounts by, for example, using fair market rent data for a particular locality as published by the U.S. Department of Housing and Urban Development, available at http://www.huduser.org/portal/datasets/fmr.html, searching for comparable rental units online, or requesting information from local real estate brokers or other experts. Investigators may also consider the reasonable cost of lodging claimed by similarly situated employers if such information is available.

Because an employer may not profit from the section 3(m) credit, an employer may only use the fair value of housing as the amount credited toward wages if that amount is equal to or lower than the amount the employer actually pays for the housing.

### E.  Wage Calculations

To calculate an hourly rate including the section 3(m) credit, the value of the lodging is added to cash wages (excluding overtime compensation) and divided by the hours worked in a given week. The credit goes toward the employer's minimum wage obligation and therefore is included in the determination of the employee's regular rate of pay for purposes of calculating any overtime compensation due. *See* 29 C.F.R. § 531.37(b) ("Where deductions are made from the stipulated wage of an employee, the regular rate of pay is arrived at on the basis of the stipulated wage before any deductions have been made. Where board, lodging, or other facilities are customarily furnished as additions to a cash wage, the reasonable cost of the facilities to the employer must be considered as part of the employee's regular rate of pay."); 29 C.F.R. § 778.116 ("Where … an employer furnishes lodging to his employees in addition to cash wages the reasonable cost or the fair value of the lodging (per week) must be added to the cash wages before the regular rate is determined."); FOH § 30c01(c) ("[T]he reasonable cost to the employer of furnishing board, lodging, or other facilities (or the fair value thereof) must be included in the employee's [regular rate] of pay for the purposes of computing [overtime] pay.").

An employer's claiming the section 3(m) credit only in overtime weeks, or in a greater amount in overtime weeks, is cause for suspicion. 29 C.F.R. § 531.37. An employer may not use the section 3(m) credit for the purpose of evading the overtime compensation requirement. *Id.*

For example, assume a live-in domestic service employee receives $6 per hour as well as room and board, for which the reasonable cost is $100 per week. If the employee works 30 hours in a workweek, the $180 ($6 x 30) cash wages is added to the $100 in section 3(m) credit for a total of $280 received in the week, which amounts to a regular rate of $9.33 ($280 / 30) per hour. Assuming the room and board credit is properly taken, this payment structure complies with the federal minimum wage requirement (that an employer pay at least $7.25 per hour).[9]

If during the following week, the same live-in domestic service employee worked for 50 hours, the employer's minimum wage obligation would still be met, but the employee, if not exempt from the overtime requirement,[10] would be due overtime compensation of one and a half times her regular rate of pay for each hour worked over 40. Specifically, she would receive $300 ($6 x 50) in cash wages plus $100 in section 3(m) credit for a total of $400, which amounts to a regular rate of $8 ($400 / 50) per hour. Her third party employer would then owe her an additional $40 ($8 x .5 x 10) in overtime compensation.

The section 3(m) credit may also be the sole payment an employee receives, provided it is sufficient to cover the employer's minimum wage obligation. *See* 29 C.F.R. § 531.36(a) ("Deductions for board, lodging, or other facilities may be made in nonovertime workweeks even if they reduce the cash wage below the minimum wage."). For example, a maintenance supervisor at an apartment complex who works for 12 hours per week could be compensated entirely by not being charged rent. If the reasonable cost of his lodging is $500 per month (or $115.38 per week, calculated by multiplying $500 by 12 months and dividing by 52 weeks), and the employer has complied with the section 3(m) requirements described above, this arrangement complies with the FLSA because the employee receives a regular rate of $9.62 per hour ($115.38 / 12).

Furthermore, section 3(m) applies to lodging furnished by the employer as compensation to an employee regardless of whether the employer calculates charges for such lodging as additions to or deductions from wages. 29 C.F.R. § 531.29. In other words, it is not relevant for purposes of calculating an employee's wages whether the employee has received housing free of charge (additions to cash wages) or has paid rent as a deduction from a paycheck or otherwise (deductions from wages).[11]

### F.  Joint Employment

As a general matter, under the FLSA any worker may be jointly employed by more than one employer. 29 C.F.R. § 791.2(a); *see also Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998) ("The FLSA contemplates several simultaneous employers, each responsible for compliance with the Act."). If it is determined, after applying the fact-specific economic realities test, that joint employment exists, then both or all employers will be jointly and severally liable for compliance with the FLSA. 29 C.F.R. § 791.2(a). In such circumstances, all employers may take credit toward their joint wage obligation for housing costs paid by any of them. *See id.* ("[A]ll joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act, including the overtime provisions, with respect to the entire employment for the particular workweek. In discharging the joint obligation each employer may, of course, take credit toward minimum wage and overtime requirements for all payments made to the employee by the other joint employer or employers."). For example, a farm owner and a farm labor contractor may jointly employ agricultural workers who receive housing as part of their employment arrangement; in such circumstances, regardless of which employer pays for the housing, provided all of the requirements described above are met, the reasonable cost or fair value of the housing may be credited toward the employers' joint FLSA wage obligations.

Joint employment is prevalent in the home care industry; a recipient of home care services (consumer) and a private home care agency, or a consumer and a public entity administering a Medicaid-funded home care program, might jointly employ a home care worker.[12] It is not uncommon for a consumer and home care agency to jointly employ a live-in domestic service employee, and for the employee to receive cash wages from the agency and housing from the consumer (such as if the home care agency pays a set amount per hour of work to that employee and the consumer pays rent on an apartment in which the employee and consumer reside). In such circumstances, the amount properly claimed as a section 3(m) credit and the cash wages are combined, as described above, to determine the total wages received for purposes of determining whether the employee has been paid in compliance with the FLSA and calculating any overtime compensation due.[13]

FIELD ASSISTANCE BULLETIN NO. 2015-1 - Wage and Hour Division (WHD) -U.S. Department of Labor                                9/25/18, 5:01 PM

Conclusion

If an employer claims a section 3(m) credit for lodging provided to an employee, the WHI must conduct a detailed analysis that includes interviews and a review of all necessary records to determine if the requirements described above are met and if so, the appropriate amount of the credit.

Please contact Derrick Witherspoon, Chief, Branch of FLSA/Child Labor at (202) 693-0715 with any questions.

---

[1]   Detailed information about the Home Care Final Rule, including the regulatory changes it made and the meaning of several terms used in this FAB, such as "domestic service employment," "third party employer," and "private home," is available at http://www.dol.gov/whd/homecare/. In particular, the preamble to the Final Rule explains that a "live-in domestic service employee," a term used frequently in this document, is a domestic service employee, such as a home care worker or nanny, who resides at the worksite on a "permanent basis" or for "extended periods of time." *See* 29 C.F.R. § 785.23; FOH § 31b20; 78 Fed. Reg. 60,474.

[2]   Several courts have rejected the WHD's position, expressed in 29 C.F.R. § 531.30, that employees must voluntarily accept meals instead of cash wages for the employer to properly count toward its minimum wage obligation the reasonable cost or fair value of those meals. *See, e.g., Herman v. Collis Foods, Inc.,* 176 F.3d 912, 916-18 (6th Cir. 1999); *Donovan v. Miller Properties, Inc.,* 711 F.2d 49, 50 (5th Cir. 1983); *Davis Bros., Inc. v. Donovan,* 700 F.2d 1368, 1369-72 (11th Cir. 1983). Accordingly, the WHD "no longer enforces the 'voluntary' provision" of 29 C.F.R. § 531.30 "with respect to meals." FOH § 30c09(b) ("Therefore, where an employee is required to accept a meal provided by the employer as a condition of employment, [the WHD] will take no enforcement action, provided that the employer takes credit for no more than the actual cost incurred.").

[3]   This presumption of voluntariness can, of course, be overcome, such as in cases involving coercion. *See Lopez,* 668 F.2d at 1380 (explaining that "even where an employee voluntarily and knowingly accepts a job which, by its nature, requires board and lodging in the employer's home, an employer may impose 'coercive' conditions—that is, conditions so onerous and restrictive that the employee's continued employment and acceptance of the board and lodging ceases to be voluntary"); *Marshall v. Intraworld Commodities Corp.,* No. 79 C 918, 1980 WL 2097, at *4 (E.D.N.Y. June 9, 1980) (rejecting an employer's claim of section 3(m) credit because the employee, brought from outside the United States and made to work six or seven days a week at his employer's home and office, "had no other place to live and no choice but to accept the food and facilities provided to him" and therefore the voluntary acceptance requirement was not met). Although such circumstances are not the norm, WHIs are advised to be attentive to any signs that the presumption of voluntariness is not applicable in a particular case.

[4]   In contrast, the primary benefit requirement typically prohibits employers from claiming certain other types of expenses as part of wages pursuant to section 3(m). Specifically, an employer's business expenses, such as tools of the trade, other materials and services incidental to carrying on the employer's business, utilities, taxes and insurance, business-related travel expenses, and uniforms required by the nature of the business, are primarily for the convenience of the employer. 29 C.F.R. § 531.3(d); FOH § 30c04. Furthermore, expenses imposed on the employer by law are for the primary benefit of the employer. Wage & Hour Opinion Letter, 1997 WL 998029 (Aug. 19, 1997) (explaining that "an employer may not take credit for facilities which the employer is required by law or regulation to provide"); *see also Bland,* 661 F.3d at 595-98 (accepting the Department's position that the cost of housing provided to employees on H-2A visas was primarily for the benefit of the employer, and thus could not be credited as part of wages under section 3(m), because regulations required that employers provide housing free of charge to H-2A workers).

[5]   Lodging will also be considered for the primary benefit of the employer if "the employee must travel away from home to further the employer's business." FOH § 30c03(a)(2). For example, hotel or other expenses incurred when an employer requires an employee to travel with the employer (such as if a home health aide accompanies an individual with disabilities to a work conference across the country or a nanny accompanies her employer's family on vacation to provide child care services) may not be included as part of wages under section 3(m). Similarly, lodging would be considered to be for the primary benefit of the employer if an employee of a chain of retail stores incurs lodging expenses because she was required to travel to a store in another state in order to train new employees at that location.

[6]   An exception applies in circumstances in which the amount of any possible section 3(m) credit is not relevant: if in any workweek an employee whose employer furnishes lodging to her receives at least the minimum wage in cash and is not owed any overtime compensation, her employer is not required to keep records of the value of the lodging as to that workweek. 29 C.F.R. § 516.27(c).

[7]   Whether an individual is an "affiliated person" depends upon the facts of the situation, although "[a] spouse, child, parent, or other close relative of the employer," "a partner, office, or employee in the employer company or firm," "a parent, subsidiary, or otherwise closely connected corporation" or "an agent of the employer" who furnishes lodging will be deemed an "affiliated person." 29 C.F.R. § 531.33(b).

[8]   In the domestic service context, if a person receiving services owns the home in which he and his employee live and therefore makes no mortgage or rental payment, the section 3(m) credit could be for the cost of paying property taxes, utilities, and other necessary costs of maintaining the home.

[9]   This example also appears in Administrator's Interpretation No. 2014-1, available at http://www.dol.gov/whd/opinion/adminIntrprtn/FLSA/2014/FLSAAI2014_1.pdf, which addresses the application of the FLSA to shared living arrangements for the provision of home care services.

FIELD ASSISTANCE BULLETIN NO. 2015-1 - Wage and Hour Division (WHD) -U.S. Department of Labor                    9/25/18, 5:01 PM

[10]  If a live-in domestic service employee is solely employed by the recipient of services (or that person's family or household member), no overtime compensation is due because the sole employer may claim the live-in domestic service employee exemption from the Act's overtime requirements. 29 U.S.C. § 213(b)(21); 29 C.F.R. § 552.102, .109(c).

[11]  When an employee is reimbursed for expenses incurred on behalf of his or her employer, however, such payments are not considered to be compensation for hours worked. Such payments therefore do not count toward wages under section 3(m) (and are excluded from the regular rate for purposes of overtime calculations).

[12]  Administrator's Interpretation No. 2014-2, available at http://www.dol.gov/WHD/opinion/adminIntrprtn/FLSA/2014/FLSAAI2014_2.pdf, addresses joint employment by public entities of home care workers employed through consumer-directed programs, a home care services delivery model funded by Medicaid.

[13]  In circumstances involving a live-in domestic service employee, joint employers can have different wage obligations, because those receiving home care services and their families or households may take advantage of the live-in domestic service employee exemption from the FLSA's overtime compensation requirement, but any third party employer may not. See 29 C.F.R. § 552.109(c). Nevertheless, any contribution toward wages the consumer (or the consumer's family or household) has made, including by paying for lodging provided to the employee, may be counted toward the third party employer's wage obligation.

Exhibit E

| Company Code | Loc/Dept | Number | Page |
|---|---|---|---|
| RO / BZ3 99957701 | 01/12a | 3680491 | 1 of 1 |

COMFORCARE SENIOR SERVICES
155 MAIN STREET SUITE 201
DANBURY, CT 06810

## Earnings Statement

**ADP**

| | |
|---|---|
| Period Starting: | 11/14/2016 |
| Period Ending: | 11/27/2016 |
| Pay Date: | 12/02/2016 |

Taxable Marital Status: Single
Exemptions/Allowances:   Tax Override:
Federal:  2       Federal:
State:    0       State:
Local:    0       Local:
Social Security Number:   XXX-XX-XXXX

Pinkie Maphutha
42 Mitchell Ave
Waterbury, CT 06710

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | 4.0400 | 80.00 | 323.20 | 2307.36 |
| Overtime | 14.4000 | 88.00 | 1267.20 | 5644.80 |
| **Gross Pay** | | | **$1,590.40** | **$7,952.16** |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -161.01 | 908.12 |
| Social Security | -98.60 | 493.03 |
| Medicare | -23.06 | 115.31 |
| Connecticut State Income | 0.00 | 0.00 |
| **Net Pay** | **$1,307.73** | |

| Other Benefits and Information | this period | year to date |
|---|---|---|
| Total Hours Worked | 168.00 | 840.00 |

| Deposits account number | transit/ABA | amount |
|---|---|---|
| XXXXXX6013 | XXXXXXXXX | 1307.73 |

Your federal taxable wages this period are  $1,590.40

COMFORCARE SENIOR SERVICES
155 MAIN STREET SUITE 201
DANBURY, CT 06810

Pay Date:          12/02/2016

| Deposited to the account | account number | transit/ABA | amount |
|---|---|---|---|
| Checking DirectDeposit | XXXXXX6019 | XXXXXXXXX | 1307.73 |

THIS IS NOT A CHECK

*P.M. Ex 5*

CONFIDENTIAL

DILIGENT0016

Company Code    Loc/Dept    Number    Page
RO7BZ3 99957701    01712a    3599341  1 of 1
COMFORCARE SENIOR SERVICES
155 MAIN STREET SUITE 201
DANBURY, CT 06810

**Earnings Statement**



Period Starting:    11/28/2016
Period Ending:     12/11/2016
Pay Date:          12/16/2016

Taxable Marital Status:    Single
Exemptions/Allowances:    Tax Override:
  Federal:    2        Federal:
  State:      0        State:
  Local:      0        Local:
Social Security Number:   XXX-XX-XXXX

Pinkie Maphutha
42 Mitchell Ave
Waterbury, CT 06710

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | 4.0400 | 80.00 | 323.20 | 2630.56 |
| Overtime | 14.4000 | 88.00 | 1267.20 | 6912.00 |
| Bonus | | 0.00 | 80.00 | 80.00 |
| **Gross Pay** | | | **$1,670.40** | **$9,622.56** |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -173.01 | 1081.13 |
| Social Security | -103.57 | 596.60 |
| Medicare | -24.22 | 139.53 |
| Connecticut State Income | 0.00 | 0.00 |
| **Net Pay** | **$1,369.60** | |

| Other Benefits and Information | this period | year to date |
|---|---|---|
| Total Hours Worked | 168.00 | 1008.00 |

| Deposits account number | transit/ABA | amount |
|---|---|---|
| XXXXXX6013 | XXXXXXXXX | 1369.60 |

Your federal taxable wages this period are $1,670.40

COMFORCARE SENIOR SERVICES
155 MAIN STREET SUITE 201
DANBURY, CT 06810

Pay Date:    12/16/2016

| Deposited to the account | account number | transit/ABA | amount |
|---|---|---|---|
| Checking DirectDeposit | XXXXXX6013 | XXXXXXXXX | 1369.60 |

THIS IS NOT A CHECK

**CONFIDENTIAL**                    **DILIGENT0015**

| Company Code | Loc/Dept | Number | Page |
|---|---|---|---|
| RO7 BZ3 99957701 | 01712a | 3718876 | 1 of 1 |

COMFORCARE SENIOR SERVICES
155 MAIN STREET SUITE 201
DANBURY, CT 06810

## Earnings Statement

**ADP**

Period Starting:    12/12/2016
Period Ending:     12/25/2016
Pay Date:          12/30/2016

Taxable Marital Status:    Single
Exemptions/Allowances:
  Federal:    2           Tax Override:
  State:     0              Federal:
  Local:     0              State:
Social Security Number:    XXX-XX-XXXX    Local:

Pinkie Maphutha
42 Mitchell Ave
Waterbury, CT 06710

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | 6.2600 | 80.00 | 500.80 | 3131.36 |
| Overtime | 14.4000 | 52.00 | 748.80 | 7660.80 |
| Bonus | | | 0.00 | 80.00 |
| Gross Pay | | | $1,249.60 | $10,872.16 |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -109.89 | 1191.02 |
| Social Security | -77.47 | 674.07 |
| Medicare | -18.12 | 157.65 |
| Connecticut State Income | 0.00 | 0.00 |
| Net Pay | $1,044.12 | |

| Other Benefits and Information | this period | year to date |
|---|---|---|
| Total Hours Worked | 132.00 | 1140.00 |

| Deposits account number | transit/ABA | amount |
|---|---|---|
| XXXXXX6013 | XXXXXXXXX | 1044.12 |

Your federal taxable wages this period are $1,249.60

COMFORCARE SENIOR SERVICES
155 MAIN STREET SUITE 201
DANBURY, CT 06810

Pay Date:        12/30/2016

| Deposited to the account | account number | transit/ABA | amount |
|---|---|---|---|
| Checking DirectDeposit | XXXXXX6013 | XXXXXXXXX | 1044.12 |

THIS IS NOT A CHECK

CONFIDENTIAL

DILIGENT0014

| Company Code | Loc/Dept | Number | Page |
|---|---|---|---|
| RO / B23 99957701 | 01/12a | 3736540 | 1 of 1 |

COMFORCARE SENIOR SERVICES
155 MAIN STREET SUITE 201
DANBURY, CT 06810

## Earnings Statement

**ADP**

| | |
|---|---|
| Period Starting: | 12/26/2016 |
| Period Ending: | 01/08/2017 |
| Pay Date: | 01/13/2017 |

Taxable Marital Status: Single
Exemptions/Allowances:  Tax Override:
Federal: 2    Federal:
State: 0    State:
Local: 0    Local:
Social Security Number: XXX-XX-XXXX

Pinkie Maphutha
42 Mitchell Ave
Waterbury, CT 06710

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | 9.0900 | 40.00 | 363.60 | 363.60 |
| Overtime | 15.1500 | 8.00 | 121.20 | 121.20 |
| **Gross Pay** | | | **$484.80** | **$484.80** |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -8.48 | 8.48 |
| Social Security | -30.06 | 30.06 |
| Medicare | -7.03 | 7.03 |
| Connecticut State Income | 0.00 | 0.00 |
| **Net Pay** | **$439.23** | |

| Other Benefits and Information | this period | year to date |
|---|---|---|
| Total Hours Worked | 48.00 | 48.00 |

| Deposits account number | transit/ABA | amount |
|---|---|---|
| XXXXXX6013 | XXXXXXXXX | 439.23 |

Your federal taxable wages this period are $484.80

COMFORCARE SENIOR SERVICES
155 MAIN STREET SUITE 201
DANBURY, CT 06810

Pay Date:        01/13/2017

| Deposited to the account | account number | transit/ABA | amount |
|---|---|---|---|
| Checking DirectDeposit | XXXXXX6013 | XXXXXXXXX | 439.23 |

THIS IS NOT A CHECK

DILIGENT0013

| Company Code | Loc/Dept | Number | Page |
|---|---|---|---|
| RO7/BZ3 99957701 | 01/12a | 3784481 | 1 of 1 |

COMFORCARE SENIOR SERVICES
155 MAIN STREET SUITE 201
DANBURY, CT 06810

## Earnings Statement

**ADP**

| Period Starting: | 01/09/2017 |
|---|---|
| Period Ending: | 01/22/2017 |
| Pay Date: | 01/27/2017 |

Taxable Marital Status:  Single
Exemptions/Allowances:      Tax Override:
Federal:    2            Federal:
State:      0            State:
Local:      0            Local:
Social Security Number:  XXX-XX-XXXX

Pinkie Maphutha
42 Mitchell Ave
Waterbury, CT 06710

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | 4.5300 | 80.00 | 362.40 | 726.00 |
| Overtime | 15.1500 | 88.00 | 1333.20 | 1454.40 |
| **Gross Pay** | | | **$1,695.60** | **$2,180.40** |

| Other Benefits and Information | this period | year to date |
|---|---|---|
| Total Hours Worked | 168.00 | 216.00 |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -176.41 | 184.89 |
| Social Security | -105.12 | 135.18 |
| Medicare | -24.59 | 31.62 |
| Connecticut State Income | 0.00 | 0.00 |
| **Net Pay** | **$1,389.48** | |

| Deposits account number | transit/ABA | amount |
|---|---|---|
| XXXXXX6013 | XXXXXXXXX | 1389.48 |

Your federal taxable wages this period are $1,695.60

COMFORCARE SENIOR SERVICES
155 MAIN STREET SUITE 201
DANBURY, CT 06810

Pay Date:          01/27/2017

| Deposited to the account | account number | transit/ABA | amount |
|---|---|---|---|
| Checking DirectDeposit | XXXXXX6013 | XXXXXXXXX | 1389.48 |

THIS IS NOT A CHECK

| Company Code | Loc/Dept | Number | Page |
|---|---|---|---|
| RO7/B23 | 66957701 | 01/12a | 3772864 | 1 of 1 |

COMFORCARE SENIOR SERVICES
155 MAIN STREET SUITE 201
DANBURY, CT 06810

## Earnings Statement

**ADP**

Period Starting:   01/23/2017
Period Ending:   02/03/2017
Pay Date:   02/10/2017

Taxable Marital Status:   Single
Exemptions/Allowances:   Tax Override:
  Federal:   2      Federal:
  State:   0      State:
  Local:   0      Local:
Social Security Number:   XXX-XX-XXXX

Pinkie Maphutha
42 Mitchell Ave
Waterbury, CT 06710

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | 4.5300 | 40.00 | 181.20 | 907.20 |
| Overtime | 15.1500 | 44.00 | 666.60 | 2121.00 |
| **Gross Pay** | | | **$847.80** | **$3,028.20** |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -49.24 | 234.13 |
| Social Security | -52.57 | 187.75 |
| Medicare | -12.29 | 43.91 |
| Connecticut State Income | 0.00 | 0.00 |
| **Net Pay** | **$733.70** | |

| Other Benefits and Information | this period | year to date |
|---|---|---|
| Total Hours Worked | 84.00 | 300.00 |

| Deposits account number | transit/ABA | amount |
|---|---|---|
| XXXXXX6013 | XXXXXXXXX | 733.70 |

Your federal taxable wages this period are  $847.80

COMFORCARE SENIOR SERVICES
155 MAIN STREET SUITE 201
DANBURY, CT 06810

Pay Date:        02/10/2017

| Deposited to the account | account number | transit/ABA | amount |
|---|---|---|---|
| Checking DirectDeposit | XXXXXX6013 | XXXXXXXXX | 733.70 |

THIS IS NOT A CHECK

DILIGENT0011

| Company Code | Loc/Dept | Number | Page |
|---|---|---|---|
| RO / BZ3 99957701 | 01/12a | 3790558 | 1 of 1 |

COMFORCARE SENIOR SERVICES
155 MAIN STREET SUITE 201
DANBURY, CT 06810

## Earnings Statement

**ADP**

Period Starting: 02/06/2017
Period Ending: 02/19/2017
Pay Date: 02/24/2017

Taxable Marital Status: Single
Exemptions/Allowances:
Federal: 2
State: 0
Local: 0
Social Security Number: XXX-XX-XXXX

Tax Override:
Federal:
State:
Local:

Pinkie Maphutha
42 Mitchell Ave
Waterbury, CT 06710

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | 10.1000 | 24.00 | 242.40 | 1149.60 |
| Overtime | | | 0.00 | 2121.00 |
| | | | | |
| Gross Pay | | | $242.40 | $3,270.60 |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | 0.00 | 234.13 |
| Social Security | -15.03 | 202.78 |
| Medicare | -3.51 | 47.42 |
| Connecticut State Income | 0.00 | 0.00 |
| | | |
| Net Pay | $223.86 | |

| Other Benefits and Information | this period | year to date |
|---|---|---|
| Total Hours Worked | 24.00 | 324.00 |

| Deposits account number | transit/ABA | amount |
|---|---|---|
| XXXXXX6013 | XXXXXXXXX | 223.86 |

Your federal taxable wages this period are $242.40

COMFORCARE SENIOR SERVICES
155 MAIN STREET SUITE 201
DANBURY, CT 06810

Pay Date:    02/24/2017

| Deposited to the account | account number | transit/ABA | amount |
|---|---|---|---|
| Checking DirectDeposit | XXXXXX6013 | XXXXXXXXX | 223.86 |

THIS IS NOT A CHECK

CONFIDENTIAL

DILIGENT0010

| Company Code | Loc/Dept | Number | Page |
| --- | --- | --- | --- |
| RO7 BZ3 99957701 | 01/12a | 3811335 | 1 of 1 |

COMFORCARE SENIOR SERVICES
155 MAIN STREET SUITE 201
DANBURY, CT 06810

## Earnings Statement

**ADP**

Period Starting:    02/20/2017
Period Ending:     03/05/2017
Pay Date:           03/10/2017

Taxable Marital Status:    Single
Exemptions/Allowances:     Tax Override:
Federal:    2           Federal:
State:      0           State:
Local:      0           Local:
Social Security Number:    XXX-XX-XXXX

Pinkie Maphutha
42 Mitchell Ave
Waterbury, CT 06710

| Earnings | rate | hours/units | this period | year to date |
| --- | --- | --- | --- | --- |
| Regular | 10.1000 | 36.00 | 363.60 | 1513.20 |
| Overtime | | | 0.00 | 2121.00 |
| | | | | |
| Gross Pay | | | $363.60 | $3,634.20 |

| Statutory Deductions | this period | year to date |
| --- | --- | --- |
| Federal Income | 0.00 | 234.13 |
| Social Security | -22.54 | 225.32 |
| Medicare | -5.28 | 52.70 |
| Connecticut State Income | 0.00 | 0.00 |
| | | |
| Net Pay | $335.78 | |

| Other Benefits and Information | this period | year to date |
| --- | --- | --- |
| Total Hours Worked | 36.00 | 360.00 |

| Deposits account number | transit/ABA | amount |
| --- | --- | --- |
| XXXXXX6013 | XXXXXXXXX | 335.78 |

Your federal taxable wages this period are $363.60

COMFORCARE SENIOR SERVICES
155 MAIN STREET SUITE 201
DANBURY, CT 06810

Pay Date:          03/10/2017

| Deposited to the account | account number | transit/ABA | amount |
| --- | --- | --- | --- |
| Checking DirectDeposit | XXXXXX6013 | XXXXXXXXX | 335.78 |

THIS IS NOT A CHECK

**CONFIDENTIAL**

**DILIGENT0009**

| Company Code | Loc/Dept | Number | Page |
|---|---|---|---|
| RO7 BZ3 89957701 | 01/12a | 3827547 | 1 of 1 |

COMFORCARE SENIOR SERVICES
155 MAIN STREET SUITE 201
DANBURY, CT 06810

## Earnings Statement

Period Starting: 03/06/2017
Period Ending: 03/19/2017
Pay Date: 03/24/2017

Taxable Marital Status: Single
Exemptions/Allowances:
Federal: 2      Tax Override:
State: 0        Federal:
Local: 0        State:
                Local:
Social Security Number: XXX-XX-XXXX

Pinkie Maphutha
42 Mitchell Ave
Waterbury, CT 06710

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | 4.5300 | 80.00 | 362.40 | 1875.60 |
| Overtime | 15.1500 | 88.00 | 1333.20 | 3454.20 |
| Gross Pay | | | $1,695.60 | $5,329.80 |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -176.43 | 410.54 |
| Social Security | -105.13 | 330.45 |
| Medicare | -24.58 | 77.28 |
| Connecticut State Income | 0.00 | 0.00 |
| Net Pay | $1,389.48 | |

| Other Benefits and Information | this period | year to date |
|---|---|---|
| Total Hours Worked | 168.00 | 528.00 |

| Deposits account number | transit/ABA | amount |
|---|---|---|
| XXXXXX8013 | XXXXXXXXX | 1389.48 |

Your federal taxable wages this period are $1,695.60

COMFORCARE SENIOR SERVICES
155 MAIN STREET SUITE 201
DANBURY, CT 06810

Pay Date: 03/24/2017

Deposited to the account

| | account number | transit/ABA | amount |
|---|---|---|---|
| Checking DirectDeposit | XXXXXX8013 | XXXXXXXXX | 1389.48 |

THIS IS NOT A CHECK

CONFIDENTIAL

DILIGENT0008

| Company Code | Loc/Dept | Number | Page |
|---|---|---|---|
| RO / BZ3 59957701 | 01/12a | 3845520 | 1 of 1 |

COMFORCARE SENIOR SERVICES
155 MAIN STREET SUITE 201
DANBURY, CT 06810

**Earnings Statement**

Period Starting:  03/20/2017
Period Ending:   04/02/2017
Pay Date:        04/07/2017

Taxable Marital Status: Single
Exemptions/Allowances:          Tax Override:
  Federal:   2              Federal:
  State:     0              State:
  Local:     0              Local:
Social Security Number: XXX-XX-XXXX

Pinkie Maphutha
42 Mitchell Ave
Waterbury, CT 06710

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | 4.5300 | 80.00 | 362.40 | 2238.00 |
| Regular | 10.1000 | -24.00 | -242.40 | |
| Overtime | 15.1500 | 88.00 | 1333.20 | 4787.40 |
| **Gross Pay** | | | **$1,453.20** | **$6,783.00** |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -140.05 | 550.59 |
| Social Security | -90.10 | 420.55 |
| Medicare | -21.07 | 98.35 |
| Connecticut State Income | 0.00 | 0.00 |
| **Net Pay** | **$1,201.98** | |

| Other Benefits and Information | this period | year to date |
|---|---|---|
| Total Hours Worked | 144.00 | 672.00 |

| Deposits account number | transit/ABA | amount |
|---|---|---|
| XXXXXX6013 | XXXXXXXXX | 1201.98 |

Important Notes

over paid 2 days on 2/24 for 2/5 & 2/6, will recoup on 3/7

Your federal taxable wages this period are $1,453.20

COMFORCARE SENIOR SERVICES
155 MAIN STREET SUITE 201
DANBURY, CT 06810

Pay Date:        04/07/2017

| Deposited to the account | account number | transit/ABA | amount |
|---|---|---|---|
| Checking DirectDeposit | XXXXXX6013 | XXXXXXXXX | 1201.98 |

THIS IS NOT A CHECK

| Company Code | Loc/Dept | Number | Page |
|---|---|---|---|
| RO7 BZ3 99957701 | 01/12a | 3663576 | 1 of 1 |

COMFORCARE SENIOR SERVICES
155 MAIN STREET SUITE 201
DANBURY, CT 06810

**Earnings Statement**

ADP.

Period Starting:    04/03/2017
Period Ending:     04/16/2017
Pay Date:             04/21/2017

Taxable Marital Status: -        Single
Exemptions/Allowances:          Tax Override:
  Federal:    2                  Federal:
  State:      0                   State:
  Local:      0                   Local:
Social Security Number:    XXX-XX-XXXX

Pinkie Maphutha
42 Mitchell Ave
Waterbury, CT 06710

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | 4.5300 | 80.00 | 362.40 | 2358.00 |
| Overtime | 15.1500 | 88.00 | 1333.20 | 6120.60 |
| Gross Pay | | | $1,695.60 | $8,478.60 |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -176.41 | 727.00 |
| Social Security | -105.12 | 525.67 |
| Medicare | -24.59 | 122.94 |
| Connecticut State Income | 0.00 | 0.00 |
| Net Pay | $1,389.48 | |

| Other Benefits and Information | this period | year to date |
|---|---|---|
| Total Hours Worked | 168.00 | 840.00 |

Deposits

| account number | transit/ABA | amount |
|---|---|---|
| XXXXXX6013 | XXXXXXXXX | 1389.48 |

Important Notes

over paid 2 days on 2/24 for 2/5 & 2/6, will recoup on 3/7

Your federal taxable wages this period are  $1,695.60

COMFORCARE SENIOR SERVICES
155 MAIN STREET SUITE 201
DANBURY, CT 06810

Pay Date:          04/21/2017

| Deposited to the account | account number | transit/ABA | amount |
|---|---|---|---|
| Checking DirectDeposit | XXXXXX6013 | XXXXXXXXX | 1389.48 |

THIS IS NOT A CHECK

**CONFIDENTIAL**

**DILIGENT0006**

| Company Code | Loc/Dept | Number | Page |
|---|---|---|---|
| RO / B23 99957701 | 01/12a | 3882054 | 1 of 1 |

COMFORCARE SENIOR SERVICES
155 MAIN STREET SUITE 201
DANBURY, CT 06810

**Earnings Statement**

Period Starting: 04/17/2017
Period Ending: 04/30/2017
Pay Date: 05/05/2017

| Taxable Marital Status: | Single | | |
|---|---|---|---|
| Exemptions/Allowances: | | Tax Override: | |
| Federal: | 2 | Federal: | |
| State: | 0 | State: | |
| Local: | 0 | Local: | |
| Social Security Number: | XXX-XX-XXXX | | |

Pinkie Maphutha
42 Mitchell Ave
Waterbury, CT 06710

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | 4.5300 | 80.00 | 362.40 | 2720.40 |
| Overtime | 15.1500 | 88.00 | 1333.20 | 7453.80 |
| Gross Pay | | | $1,695.60 | $10,174.20 |

| Statutory Deductions | | this period | year to date |
|---|---|---|---|
| Federal Income | | -176.41 | 903.41 |
| Social Security | | -105.13 | 630.80 |
| Medicare | | -24.59 | 147.53 |
| Connecticut State Income | | 0.00 | 0.00 |
| Net Pay | | $1,389.47 | |

| Other Benefits and Information | this period | year to date |
|---|---|---|
| Total Hours Worked | 168.00 | 1008.00 |

| Deposits account number | transit/ABA | amount |
|---|---|---|
| XXXXXX8013 | XXXXXXXXX | 1389.47 |

**Important Notes**

over paid 2 days on 2/24 for 2/5 & 2/6, will recoup on 3/7

Your federal taxable wages this period are $1,695.60

COMFORCARE SENIOR SERVICES
155 MAIN STREET SUITE 201
DANBURY, CT 06810

Pay Date:        05/05/2017

| Deposited to the account | account number | transit/ABA | amount |
|---|---|---|---|
| Checking DirectDeposit | XXXXXX8013 | XXXXXXXXX | 1389.47 |

THIS IS NOT A CHECK

**CONFIDENTIAL**

DILIGENT0005

| Company Code | Loc/Dept | Number | Page |
|---|---|---|---|
| RO7 BZ3 99957701 | 01/12a | 3902498 | 1 of 1 |

COMFORCARE SENIOR SERVICES
155 MAIN STREET SUITE 201
DANBURY, CT 06810

## Earnings Statement

**ADP**

Period Starting:     05/01/2017
Period Ending:       05/14/2017
Pay Date:            05/19/2017

Taxable Marital Status:    Single
Exemptions/Allowances:     Tax Override:
 Federal:     2          Federal:
 State:       0          State:
 Local:       0          Local:
Social Security Number:    XXX-XX-XXXX

Pinkie Maphutha
42 Mitchell Ave
Waterbury, CT 06710

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | 4.5300 | 40.00 | 181.20 | 2901.60 |
| Overtime | 15.1500 | 44.00 | 666.60 | 8120.40 |
| **Gross Pay** | | | **$847.80** | **$11,022.00** |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -49.24 | 952.65 |
| Social Security | -52.56 | 683.36 |
| Medicare | -12.29 | 159.82 |
| Connecticut State Income | 0.00 | 0.00 |
| **Net Pay** | **$733.71** | |

| Other Benefits and Information | this period | year to date |
|---|---|---|
| Total Hours Worked | 84.00 | 1092.00 |

| Deposits account number | transit/ABA | amount |
|---|---|---|
| XXXXXX8013 | XXXXXXXXX | 733.71 |

Important Notes
over paid 2 days on 2/24 for 2/5 & 2/8, will recoup on 3/7

Your federal taxable wages this period are $847.80

COMFORCARE SENIOR SERVICES
155 MAIN STREET SUITE 201
DANBURY, CT 06810

Pay Date:     05/19/2017

| Deposited to the account | account number | transit/ABA | amount |
|---|---|---|---|
| Checking DirectDeposit | XXXXXX8013 | XXXXXXXXX | 733.71 |

THIS IS NOT A CHECK

CONFIDENTIAL

DILIGENT0004