UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PINKIE MAPHUTHA, | : | |
| Plaintiff | : | |
| | : | No. 19-cv-1411  (VLB) |
| v. | : | |
| | : | |
| DILIGENT ENTERPRISES, INC. and | : | August 9, 2021 |
| DEVON WILLIAMS, | : | |
|   Defendants | : | |
| | : | |
| | : | |
| | : | |

MEMORANDUM OF DECISION
GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

Pinkie Maphutha brought this action against Diligent Enterprises, Inc. d/b/a Comforcare Home Care ("Diligent Enterprises") and its owner, Devon Williams, alleging violation of the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 201, *et seq.*, and the Connecticut Minimum Wage Act ("CMWA"), Conn. Gen Stat. § 31-58, *et seq.* Plaintiff, who was formerly employed by the Defendants as a 24-hour live in health care aide, alleges that she was not paid when her sleep time was interrupted by the Defendants' client's service calls and for instances where she did not receive meal breaks, both of which occurred daily. *See generally* [Dkt. 1-1, Ex. A (Compl.)].[1] Additionally, Plaintiff alleges that Defendants improperly deducted the costs of food and lodging from Plaintiff's wages by exceeding the

---

[1] The issue of whether Mr. Williams is personally liable as Plaintiff's employer is not before the Court presently. Mr. Williams does not concede that he is an employer for FLSA purposes. See [Dkt. 43-1, Def. Mem. in Supp. at 8, n. 2]

amount that could be deducted without documentation as to actual costs. [*Id.* ¶¶ 22-23]. Plaintiff seeks liquidated damages for alleged willful violation of the FLSA and CMWA pursuant to § 216(c) and Conn. Gen. Stat. § 31-76(c). [*Id.* ¶ 34].

Before the Court is Defendants' motion for partial summary judgment on the issues of (1) whether Plaintiff is owed overtime wages and (2) whether Plaintiff can establish that any FLSA violations were willful or whether the Defendants can establish a good faith basis for any violation of the CMWA. [Dkt. 43 (Defs. Mem. in Supp. for Summ. J.)]. For reasons set forth herein, the Defendants' Motion for Partial Summary Judgment is GRANTED in part and DENIED in part.

## Background

The following facts are taken from the Local Rule 56 statements of material facts and evidence cited by the parties.[2] The facts are read in the light most favorable to the non-movant, Ms. Maphutha. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The Court previously considered virtually identical arguments and claims involving Diligent Enterprises's payroll policies and practices for live-in home health aides in *Mmolawa v. Diligent Enterprises, Inc.*, No. 19-CR-300 (VLB), 2020 WL 7190819 (D. Conn. Dec. 7, 2020)(memorandum of decision granting in part and

---

[2] For ease of reference, exhibits will refer to evidentiary exhibits included with the Defendant's Motion for Summary Judgment [Dkt. 44] and Plaintiff's Opposition [Dkt. 45] by exhibit only. i.e. [Def. Ex. A] and [Pl. Ex. 1]. Citation to the Defendant's. D. Conn. Civ. L. R. 56(a) statement is applicable where the parties agree as to the fact stated.

denying in part Defendants' motion for partial summary judgment). The parties are represented by the same attorneys and agreed to use Mr. Williams's deposition testimony in *Mmolawa* for this case. [Dkt. 45 (Pl. Mem. in Opp'n) at 3, n. 1)]. The Court's analysis largely tracks its decision in *Mmolawa*. To the extent relevant, the Court will note factual and legal differences between the cases.

## I. Overtime claims

Diligent Enterprises is a home health care agency. Plaintiff worked as a live-in home health aide for the company from on or around August 31, 2016 to May 6, 2017. [Pl. Ex. 1 (Def. Resp. to Initial. Disc. Protocols) at 4]. After an initial temporary assignment, Plaintiff was assigned to work for Defendants' client, Jacqueline Smith Coughlin. [Def. L. R. 56(a)(1) statement ¶ 1]; [Pl. Ex. 5 (Maphutha Depo.) 21:01-21:11](explaining initial temporary assignment before permanent assignment). Before she began her permanent assignment, she executed a Live-In Aide Agreement with Diligent Enterprises and Ms. Coughlin. [Def. L. R. 56(a)(1) statement ¶ 2]. Defendants filed a copy of the executed agreement. [Def. Ex. A]. The agreement provides, in relevant part:

> If the employee is required to be on duty for 24 hours or more, a regularly scheduled sleeping period of no more than 8 hours will be excluded from hours worked provided adequate sleeping facilities are provided and the employee can usually have an uninterrupted night's sleep. If you are not able to get 8 hours [sic] sleep each day you'll be removed and different personnel will be tried or the case will be converted to hourly or transferred back to the appropriate authorities and deemed live in inappropriate.
>
> . . .
>
> If the sleeping period is interrupted by a need to provide services for the client, the period of the interruption will count as hours worked. If the period of interruption is such that the employee cannot get at least 5 hours of

uninterrupted sleep during the scheduled sleep period, the entire time will be treated as hours worked.

You are also required to take 3 one hour break[s] for each meal (breakfast, lunch, dinner). Between those breaks you must also take 2 (1/2) hour breaks. <u>Meal provision is the full responsibility of the client</u>.

(underlining where bold in original).

Plaintiff admitted that she reviewed the contents of the Live-In Aide Agreement prior to signing it on September 21, 2016. [Def. L. R. 56(a)(1) statement ¶ 5]. At the time she began her assignment, Defendants provided her with a time sheet to complete and instructed her to complete it each day. [Def. L. R. 56(a)(1) statement ¶ 7]. Each week, Plaintiff completed and submitted a time sheet and a log tracking her activities and work hours. [Def. L. R. 56(a)(1) statement ¶¶ 9-10]; [Def. Ex. B]. The time sheet and log are identical to the forms at issue in *Mmolawa v. Diligent Enterprises, Inc.*, No. 19-CR-300 (VLB), 2020 WL 7190819, at *3.

The first form is titled "ComForcare Homecare Services Live-in Services Hourly Log." *E.g.* [Def. Ex. B ("Home Care Log") at 5]. The Home Care Log consists of a table for employees to log the amount of time spent performing general housework, total hours of sleeping time, total hours of break time, remaining hours with the client, and the total of all hours. Each column includes an explanatory note stating how much time *should* be allotted for that category. For total hours of sleeping time, the form states "[s]hould be 8 but no less than 5." For total hours of break time, it states "[m]ust be at least 30 minutes of uninterrupted time to be a break." The table contains seven rows for employees to enter their time. The time allotments in the first row are pre-filled with 1.5 hours for general housework, 8 hours for sleeping time, "1+3 (meal)" for break time, 1.5 hours as remaining time

with the client, and a total of 24 hours. In other words, if on the first workday of the week Plaintiff received more or less sleeping time or break time than suggested by the form, she would have to cross out the pre-filled portion and list the amount that she actually received. Plaintiff repeated the form's suggested time allotments for every day she worked. Plaintiff signed every form and never indicated on any of the forms that she received any amount other than eight hours of sleeping time and "1+3 (meal)" for break time. *See also* [Def. L. R. 56(a)(1) statement ¶¶ 14-15].

Plaintiff initially testified that she was not provided any instructions beyond the explanatory note contained in the Home Care Log and the example. [Pl. Ex. 5 (Maphutha Depo.) at 23:05-23:21, 33:02-34:05]. During cross examination by her counsel, Plaintiff explained that she followed the sample timesheet but was ambiguous regarding the instructions she received. *Compare*:

Q· · · Okay.· And you filled in all these boxes down here?

A· · · Uh-huh (affirmative.)

Q· · · For each day?

A· · · Yes.

Q· · · Yes.· Okay.· And did anyone tell you how to fill out this form?

A· · · They just gave me that form that I should fill it like this.

Q· · · Okay. And what did they tell you about the form when they gave it to you, if anything?

A· · · They said I have to do it every day, to fill that out every day.

[Pl. Depo. at 33:08-33:20](direct examination) *with*

Q· · · Okay.· Now, did they give you instructions about ·how to fill out this form when you started working for Diligent?

A· · · This is why I fill it like this.

5

Q· · · Why did you fill it like this?

A· · · Yeah, they just ask you to do that.

Q· · · Did they give you an example to follow?

A· · · Yes.

Q· · · What example did they give you?

A· · · The time sheet like this one.

Q· · · Okay. And so, you had all the same numbers on top, and they told you to do the same thing?

A· · · Yes.

Q· · · Who told you to do that?

A· · · I don't know whether it is Mr. Devon, they gave me this time sheet to fill it up.

Q· · ·So, on all the time sheets you filled out, you followed the example they gave you, right.

A· · · Yes.

[Pl. Depo. at 85:08-86:01](cross examination).

Plaintiff denies that the figures on the Home Care Logs she completed accurately reflect her sleeping and break time. [Dkt. 45-1, Pl. Obj. to Def. L. R. Civ. P. 56(a)(1) Statement ¶ 6]. Plaintiff testified that she moved into a separate bedroom in Ms. Coughlin's house upon accepting the assignment. [Pl. Ex. 5 (Maphutha Depo.) 44:16-44:18]. She testified that she was unable to begin sleeping until after 9:00 P.M. because she needed to assist Ms. Coughlin to bed after her daughter left or the television program that she watched concluded. [Pl. Ex. 5 (Mapthutha Depo.) at 51:08-51:11, 90:06-90:25]. Plaintiff testified that she was unable to sleep because she was awoken by Ms. Coughlin's calls for assistance every night, which could last up to one hour. [Pl. Ex. 5 (Mapthutha Depo.) at 91:01-92:15]. Plaintiff testified that she never recorded when she was awoken and the duration of her sleep

interruption. [*Id.* at 95:03-95:06]. It is undisputed that Plaintiff never reported her sleep interruption to the Defendants. [Def. L. R. 56(a)(1) statement ¶ 17]. She further testified that although she reported issues with sleeping to Ms. Coughlin's daughter, she did not expect her to tell Mr. Williams about the issues. [Def. L. R. 56(a)(1) statement ¶ 18]

As to Diligent Enterprise's policy, Mr. Williams testified that the company refers to sleep periods as "rest time." [Pl. Ex. 5 (Williams Depo.) at 65:02-65:11]. He testified that: "The staff does not define the sleep time on their own. They rest when the clients rest. We don't ask the clients [to] adapt to their lifestyle, but for them to have the flexibility to rest when the client rests. All clients are different." [*Id.* at 65:10-65:15]. He testified that "rest time" could be any time within 24 hours of a given day. [*Id.* at 65:20-65:22]. Later, Mr. Williams explained that the expectation that employees adapt to their client's sleep schedule exists within the context that the employee must receive eight hours of rest time, five hours of which must be uninterrupted, which is agreed upon by the client. [*Id.* at 98:01-100:23]. In other words, the suitability of an assignment is dependent on an agreement between the caregiver and the client regarding when they would begin and end their day. Mr. Williams testified that it is acceptable for caregivers to sleep while the client is awake. [*Id.* at 100:10-100:13]. Diligent Enterprises required caregivers to report sleep disruptions. See [*Id.* at 96:19-96:20].

As to Plaintiff's meal breaks, she testified that Ms. Coughlin's daughters purchased groceries, bottled water, and occasionally cooked food for Ms. Coughlin and Plaintiff. [Pl. Ex. 5 (Mapthutha Depo.) at 43:03-43:11, 47:05-48:04]. Ms. Coughlin

did not want to eat with Plaintiff and Plaintiff did not like the food Ms. Coughlin's daughters purchased for them. [*Id.* at 43:21-44:13, 46:19-48:04]. However, Ms. Coughlin's daughter insisted that she eat with Plaintiff because they believed that dining together was a part of Plaintiff's job. [*Id.* at 43:21-44:13, 46:19-47:06, 93:25-94:06]. Plaintiff testified that she always ate with Ms. Coughlin and never had uninterrupted breaks alone because she felt that she could not leave Ms. Coughlin unattended. [*Id.* at 88:07-88:24]. Plaintiff does not argue or adduce any evidence to show that she informed Defendants about her interrupted meal breaks. Nor does Plaintiff adduce any evidence to show that Plaintiff was required by the Defendants to eat her meals with Ms. Coughlin. *See also* [*Id.* at 47:01-47:06](Q. "Okay. Did you eventually reach an agreement with Miss Coughlin where she would eat with you?" A. "I didn't like anything because it's like she has dementia, and the daughter tell me that do what you want. . . .")(*sic*).

Plaintiff testified that there was a period in February and March 2017 that she remained in Ms. Coughlin's house while Ms. Coughlin was hospitalized. [Def. L. R. 56(a)(1) statement ¶ 8]. Plaintiff's assignment with Ms. Coughlin ended in May 2017 after Plaintiff was hospitalized for a brain tumor and then relocated to Maryland. [*Id.* at 63:09-69:09]. Plaintiff never asked how her pay was calculated during her employment with Diligent Enterprises. [Def. L. R. 56(a)(1) statement ¶ 26].

II.   <u>Defendants' wage and hour compliance efforts and payroll deductions</u>

The parties' evidence and arguments concerning Defendants' wage and hour compliance efforts in this case are virtually identical to those previously considered by the Court in *Mmolawa v. Diligent Enterprises, Inc.*, 2020 WL 7190819, at *5-6.

In support of their motion for partial summary judgment, Defendants aver that Diligent Enterprises set Plaintiff's pay rate in accordance with guidance from the Connecticut Department of Social Services ("DSS") and the Connecticut Department of Labor ("CT DOL"). [Def. L. R. 56(a)(1) statement ¶¶ 19-20]. Defendants further argue that Mr. Williams contacted Gary Pechie, then-Director of the CT DOL for guidance regarding payroll policies for deducting meal and sleeping time. [Def. L. R. 56(a)(1) statement ¶ 21].

In support of this contention, the Defendants filed a copy of an email chain from Mr. Williams to Mr. Pechie, although the date of the email chain is omitted from Defendants' exhibit. [Def. Ex. A]. Plaintiff also filed a copy of the email chain which shows that Mr. Williams sent the message to Mr. Pechie on December 11, 2014. [Pl. Ex. 8]. In the email, Mr. Williams asks Mr. Pechie whether the state agency would view a requirement that home-health aides receive eight hours of sleeping and the four cumulative hours of breaks per day as reasonable. [Pl. Ex. 5 (Email from Williams to Pechie, 12/11/2014)]. Mr. Williams's email continues that "…[it] will be made aware to staff that if they violate or non compliant or if the event is beyond their control-as a company policy the client will be staffed differently (including

sending back to the state or relevant authorities.)" (*sic*) (parenthetical in original). Mr. Pechie, as the Director of the CT DOL Wage and Workplace Standards Division, responded with, "[t]hat looks reasonable." [Pl. Ex. 5 (Pechie Repl. Email to Williams, 12/11/2014)].

Defendants argue that they undertook further compliance efforts after Mr. Pechie left the CT DOL by contacting another investigator with the department, Kristi Kenefick, who provided advice on Diligent Enterprise's timesheets and a copy of the U.S. DOL's Field Assistance Bulletin No. 2015-1. [Def. L. R. 56(a)(1) statement ¶¶ 21, 23-24]. In opposition, Plaintiff argues that the Defendants did not contact Ms. Kenefick until March 2018, after the Defendants were on notice of a claim brought by plaintiff's counsel on behalf of another former home health aide asserting that she was due unpaid wages for interrupted sleep time for every night that she was employed. [Pl. L. R. 56(a)(2) statement ¶ 35]. Defendants do not rebut that Mr. Williams's communications with Ms. Kenefick occurred approximately one year after Plaintiff was last employed by the Defendants and after they were on notice of a wage and hour claim. *See* [Dkt. 46 (Def. Repl. Br.) at 8].

Plaintiff argues that following advice from Mr. Pechie, Defendants received subsequent and superseding guidance from the CT DOL, specifically the Revised Joint DSS and CT DOL Guidance and the DOL Field Assistance Bulletin No. 2015-1. [Pl. Mem. in Opp'n. at 33]. The Revised Joint DSS and CT DOL Guidance issued on March 31, 2016 summarizes the U.S. Department of Labor's ("U.S. DOL") final

rule titled "Application of the Fair Labor Standards Act to Domestic Service." [Def. Ex. C (Rev. Joint DSS and CT DOL Guidance, 03/31/2016)](citing 29 CFR 552.102). [3]

The U.S. Department of Labor's rule covers both employer-credits for food and lodging and deductions for sleeping time and meal breaks. [*Id.*]; [Def. Ex. D (U.S. DOL Field Asst, Bulletin No. 2015-1)]. As the Court previously held in *Mmolawa,* 2020 WL 7190819, at \*5, in so far as the guidance addresses employer deductions for sleeping time and meal breaks, there are no substantive deficiencies with Diligent Enterprises' policy itself. *See* "Live in Aide Agreement" excerpted at *supra.* 3-4;

As to the meal and lodging credits, the definition of "wage" under the FLSA "includes the reasonable cost ... to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees..." 29 U.S.C. § 203(m)(1). The Revised Joint DSS and CT DOL Guidance explains that:

> **USDOL has indicated that housing costs must be calculated on an individual basis, and are dependent on actual housing-related expenditures.** Pursuant to the FLSA record keeping regulations, in order to take a wage credit under

---

[3] The U.S. DOL rule was announced on October 1, 2013, with an initial effective date of January 1, 2015. Application of the Fair Labor Standards Act to Domestic Service, 78 FR 60454-01 (Oct. 1, 2013). The rule was challenged by trade groups under the Administrative Procedures Act in 2014. *Ass'n of Am. v. Weil*, 76 F. Supp. 3d 138, 139-40 (D.D.C. 2014), *rev'd*, 799 F.3d 1084 (D.C. Cir. 2015). The U.S. DOL suspended enforcement of the revised rule until 30 days after the U.S. Court of Appeals for the D.C. Circuit issued its mandate in *Ass'n of Am. v. Weil*, 799 F.3d 1084 (D.C. Cir. 2015). Application of the Fair Labor Standards Act to Domestic Service; Announcement of 30-Day Period of Non-Enforcement, 80 FR 55029-01 (Sept. 14, 2015). The D.C. Circuit reversed the district court and upheld the validity of the domestic service rule on August 21, 2015.  799 F.3d 1084.

section 3(m), an "employer must maintain accurate records of the (actual) costs incurred in furnishing lodging to the employee.

[Def. Ex. C at 2](citing 29 C.F.R. § 516.27(a) and 29 C.F.R. § 552.100 (d))(underlining where bold in original).

The Revised Joint DSS and CT DOL guidance "strongly recommend[ed]" that employers review the U.S. Department of Labor's Field Assistance Bulletin 2015-1, which explains the requirements for an employer to deduct the food and lodging credit from regular-time wages. [*Id.* at 1].

The U.S. Department of Labor's Field Assistance Bulletin 2015-1 states that "[b]eacuse live-in domestic services employees, for example, often reside at the employers' private homes without paying rent, this requirement is met for those workers." [Pl. Ex. 7 at 2]. "With respect to live-in domestic service employees only, an employer that does not provide such records may claim a certain amount-up to seven and one-half times the statutory minimum hourly wage for each week lodging is furnished, currently $54.38 (7.5 x $7.25) – toward wages rather than the reasonable cost or fair value of the housing provided." [*Id.* at 3](citing 29 C.F.R. § 552.100(d)).

Plaintiff avers that the Defendants deducted $336.80 biweekly from her paychecks. [Pl. Mem. in Opp'n at 35]. From the Court's review of the payroll records, it appears that Diligent Enterprises deducted the food and lodging credit by downwardly adjusting Plaintiff's regular time hourly pay rates. [*Id.*]. Neither the amount of the food and lodging credit nor the methodology used by Diligent Enterprises in calculating the credit are expressly reported on Plaintiff's earning statements.

<u>Discussion</u>

I.   <u>**Legal Standard**</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no genuine factual disputes exist. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.* (citing *Anderson*, 477 U.S. at 255; *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). This means that "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000); see *Welch-Rubin v. Sandals Corp.*, No. 3:03-cv-00481, 2004 WL 2472280, at *4 (D. Conn. Oct. 20, 2004) ("At the summary judgment stage of the proceeding, [the moving party is] required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient."); *Martinez v. Conn. State Library*, 817 F. Supp. 2d 28, 37 (D. Conn. 2011). Put another way, "[i]f there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).

A party who opposes summary judgment "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726–27 (2d Cir. 2010).

## II.    Overtime Wages under the FLSA and CMWA

The FLSA mandates that, absent defined and significant exceptions, "no employer shall employ any of his employees who in any workweek … for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

Here, as was also the case in *Mmolawa*, there is no dispute that Plaintiff is an "employee" of Diligent Enterprises. Additionally, there is agreement that Plaintiff was properly classified as a non-exempt employee, meaning that the employer is obliged to pay her overtime compensation for any work week longer than forty hours.  Whether Defendants are entitled to summary judgment on Plaintiff's overtime compensation claim hinges on (1) whether Defendants can

establish the existence of an agreement to exclude "bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours" pursuant to 29 C.F.R. § 785.22 and, if so, (2) whether there is a factual issue concerning whether Plaintiff worked overtime without compensation.

A. <u>Whether an agreement existed to exclude meal and sleeping periods.</u>

The parties in *Mmolawa* did not litigate the issue of whether there was an agreement to exclude "bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours" from hours worked.

In opposition to summary judgment, Plaintiff argues that Defendants cannot establish the applicability of an exemption for meal and sleeping periods under 29 C.F.R. § 785.22 because Plaintiff was not allowed a regularly scheduled sleeping period because Defendant's instructed their employees to adapt to their clients' sleep habits. [Pl. Mem. in Opp'n at 12-15]. Next, Plaintiff argues that, even if an agreement exists to exclude meal and sleeping periods from time worked, it was not a "bona fide regularly scheduled sleeping period" and that Plaintiff's testimony should be credited in the absence of a record showing that she enjoyed uninterrupted meal and sleeping periods. [*Id.* at 15-19].

In reply, Defendants argue that Plaintiff relies on part of Mr. Williams's testimony about the expectation that caregivers adapt to their client's schedule without addressing the qualification that the Defendants expected caretakers to receive eight hours of sleep, five of which were to be uninterrupted. [Def. Repl. Br. at 2-3]. Defendants argue that the Court should reject Plaintiff's argument that its

employment records are inadequate because Plaintiff submitted the timesheets and cannot show that she informed the Defendants about sleep interruptions. [*Id.* at 3-6]. The Court agrees with the Defendants.

29 C.F.R. § 785.22 provides that:

(a) **General.** Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked.

(b) **Interruptions of sleep.** If the sleeping period is interrupted by a call to duty, the interruption must be counted as hours worked. If the period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, the entire period must be counted. For enforcement purposes, the Divisions have adopted the rule that if the employee cannot get at least 5 hours' sleep during the scheduled period the entire time is working time.

There is no dispute that the "Live-in-Aide Agreement" establishes that all parties agreed to Diligent Enterprises's requirement that its live-in aides receive at least eight hours of uninterrupted sleeping time, four hours of meal breaks, and that the provision of meals was Ms. Coughlin's responsibility. Plaintiff conceded that she read the agreement before signing it. The Live-in-Aide Agreement specifies that the sleeping and meal periods must be "regularly" scheduled but does not specify when they must occur during a 24-hour day. Mr. Williams's testimony makes clear that Defendants expected that the caregivers and the clients would reach an agreement about when these periods would be regularly scheduled. Plaintiff's testimony demonstrates that her sleep periods were regularly

scheduled: "I always work 24 hours from 8:00 o'clock, but I would never sleep at 8:00 o'clock.· I didn't sleep at 8:00 because Carol would come and stay with us until 9:00 o'clock, then after she left, that's when I put the mom to bed and I go upstairs to sleep."[Pl. Ex. 5 (Maphutha Depo.) 51:08-51:12]. Additionally, there is no genuine issue of material fact that Plaintiff enjoyed adequate sleeping accommodations.

Consequently, because there was an agreement to exclude meal and sleeping periods under 29 C.F.R. § 785.22, Plaintiff's overtime claim hinges on whether a genuine issue of material fact exists over whether she enjoyed uninterrupted sleep and meal periods.

### B. Whether there is a factual issue concerning whether Plaintiff worked overtime without compensation.

"An employee who brings suit under § 16(b) of the [FLSA] for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated. The remedial nature of this statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee. Due regard must be given to the fact that it is the employer who has the duty under § 11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946)(superseded by statute on other grounds). The Connecticut Supreme Court adopted the *Anderson* burden-shifting framework for analyzing

claims under the CMWA. *Schoonmaker v. Lawrence Brunoli, Inc.*, 265 Conn. 210, 234 (2003); *see also Stevens v. Vito's by the Water, LLC*, No. HHDCV156062506S, 2016 WL 7668509, at *4 (Conn. Super. Ct. Nov. 25, 2016).

The U.S. Supreme Court in *Anderson* reasoned that an employee may easily discharge their burden of establishing a claim for unpaid minimum wages or overtime compensation by mere production of the employer's records if the records are adequate and accurate. *Id.* at 686. But, in cases where the employer's records are inadequate or inaccurate, the employee may satisfy their burden by presenting "…sufficient evidence to show the amount and extent of [the uncompensated work] as a matter of just and reasonable inference." *Id.* at 687. If the employee does so, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Id.* at 687-88.

In *Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011), the Second Circuit rejected the district court's application of a more stringent standard in cases where an "off-site" employee submits their own timesheets. "In other words, once an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours. Accordingly, the fact that an employee is required to submit his own timesheets does not necessarily preclude him from

18

invoking *Anderson's* standard where those records appear to be incomplete or inaccurate." *Kuebel*, 643 F.3d at 356-57, 363. In *Kuebel*, the plaintiff testified that, notwithstanding official company policy requiring accurate timekeeping, he falsified his timesheets at the direction of his managers. *Id.* That said, "[f]or compensation to be awarded, plaintiff's activities must not only satisfy the above definition of work but must also be performed with the employer's knowledge." *Holzapfel v. Town of Newburgh, N.Y.*, 145 F.3d 516, 524 (2d Cir. 1998); *see also Kuebel*, 643 F.3d at 365.

The forms dictated accurate reporting of work, breaks, and sleep time. Plaintiff completed the logs and her contemporaneous recordings of the way she spent her time establish that she received the requisite amount of sleep time and meal breaks. "The pre-printed forms are suggestive, but the "should" language that appears in the column implies a condition: if the employee receives more or less time than that suggested by the form, that amount of time is to be recorded below." *Mmolawa*, 2020 WL 7190819, at *8.

Plaintiff's testimony regarding whether she received instructions on the forms is ambiguous. At best, she followed the suggested time allotments on the forms. Plaintiff fails to offer evidence that she was misinformed or was insufficiently trained on how to complete the logs and accurately record her time. Nor does she show that she was instructed to falsify her time sheets and activity logs. *Compare to Kuebel*, 643 F.3d at 357("Kuebel allegedly told [manager] that the forty hours appearing on his timesheets 'was not accurate' because he was

working more than forty hours per week, and [manager] responded, 'you're only supposed to mark forty on your timecard because we can't afford overtime.' ").

Plaintiff further argues that "Defendants cannot claim ignorance of Plaintiff's duties at night. Defendants clearly had a care plan for Ms. Coughlin and knew that she suffered dementia and severe mobility problems from her hip operation. Defendants never even showed Plaintiff the care plan for Ms. Coughlin." [Pl. Mem. in Opp'n at 18]. Plaintiff's argument is conclusory, without citation to admissible evidence or law. She did not adduce any evidence to suggest that the Defendants knew or should have known that her position could not be performed during the 11-12 hours per day that Plaintiff reported working based on Ms. Coughlin's medical conditions.

Here, like *Mmolawa*, there is no evidence upon which a fact-finder could reasonably conclude that the employer had actual or constructive knowledge that Plaintiff was working more hours than she recorded on her time sheet. In contrast to the vague and conclusory testimony offered by Mr. Mmolawa to demonstrate that the Defendants were on notice of his sleep interruptions, Plaintiff concedes that she never attempted to inform the Defendants of Ms. Coughlin's late-night calls for assistance.

On summary judgment, the Court credits Plaintiff's testimony that Ms. Coughlin requested or required assistance throughout the evening. But Defendants establish that Plaintiff never informed them she was receiving less sleep and break time than she reported. Therefore, Plaintiff cannot establish the

first element of her FLSA claim for past due overtime wages because she cannot show that she worked more hours than overtime wages previously paid.

Plaintiff also claims that Defendants improperly paid Plaintiff only twelve hours per 24-hour shift instead of the minimum thirteen hours per 24-hour shift. [Pl. Mem. in Opp'n at 9-10](citing Conn. Gen. Stat. § 31-76(b)(2)]. Plaintiff argues that she is entitled to one hour of overtime for every 24-hour shift worked during a week she worked in excess of forty hours. [*Id.*](citing *Kinkead*, 450 F. Supp. 3d at 180).

In reply, Defendants argue that "Plaintiff points to only one instance of this occurring—i.e., for the two-week period of January 9 through January 22, 2017. Thus, to the extent this error occurred, Plaintiff has pointed to only one instance of its having occurred, rendering it an isolated error at best." [Def. Repl. Br. at 2, n. 2].

On this sub-issue, neither party is correct. Plaintiff's opposition brief cites Plaintiff's paystub from January 2017 as an example. However, Plaintiff was frequently paid for 80 hours of regular time and 88 hours of overtime bi-weekly, meaning she was paid for working 12 hours per day, seven days per week, not 13 hours per day. *See infra*. 24-25 (wage calculation). But the agreement and the logs are clear that Plaintiff was to receive three meal breaks and two 30-minute breaks. The issue of whether the two thirty-minute breaks in addition to three meals can be deducted was not addressed by the *Kinkead* court or by Conn. Gen. Stat. § 31-76(b). In *Kinkead*, the parties purported agreement concerned the exclusion of 8 hours of on-site sleep time and 3 hours of meal breaks from hours worked.

*Kinkead*, 450 F. Supp. 3d at, 177. *Compare to Andryeyeva v. New York Health Care, Inc.*, 33 N.Y.3d 152 (2019)(citing New York law requiring "such persons must be paid for no less than 13 hours of each 24–hour day they are required to remain 'on call' in the home . . ."); *see also* 29 C.F.R. § 785.19 (U.S. DOL regulation interpreting the minimum length of meal periods but leaving the number of meal periods per day unspecified). Plaintiff has not established the existence of Connecticut or federal law establishing that she is entitled to compensation for an additional hour per every day worked under a 13-hour minimum wage rule unless she can show that she worked that hour. For reasons stated above, Plaintiff agreed to four hours of meal periods and breaks per day and she failed to show that she did not receive these uninterrupted breaks each day worked.

The Court GRANTS summary judgment for the Defendants as to Plaintiff's overtime claims.

III.     **Whether Defendants are entitled to summary judgment on the issue of whether they knew or had reckless disregard for whether their conduct violated the provisions of §§ 207, 211 and 215(a)(2) of the FLSA.**

Defendants' motion for partial summary judgment on Plaintiff's claim that they knew or had reckless disregard for whether their conduct violated the provisions of §§ 207, 211 and 215(a)(2) of the FLSA fails for the same reason that it did in *Mmolawa*. 2020 WL 7190819, at *9-10.

Plaintiff alleges that the Defendants took a wage credit for Plaintiff's food and lodging in excess of the maximum allowable amount without documentation as to the factual amount incurred. [Compl. ¶¶ 22-23]. Defendants have not moved for summary judgment on this claim, but instead argue that any error made in

calculating the amount of the food and lodging credit under the FLSA was the result of negligence and not a willful violation. [Def. Mem. in Supp. for Partial Summ. J. at 15-22]. Since the Court granted summary judgment for the Defendants on Plaintiff's overtime claim, the inquiry instead focuses on Plaintiff's food and lodging deductions.

As the Second Circuit explained in *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009), "[a]n employer willfully violates the FLSA when it 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by' the Act. Mere negligence is insufficient. The effect of a willfulness finding is to extend the statute of limitations period from two to three years. See 29 U.S.C. § 255(a). The burden is on the employee to show willfulness." (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Herman v. RSR Sec. Svcs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999)).

Defendants argue that "[w]hile Plaintiff claims that Defendants violated the FLSA by improperly deducting from Plaintiff's pay for food and lodging, she provides no proof that she paid for her meals and cannot dispute that she was provided lodging . . . Moreover, even if Defendants erred in calculating the proper amount of the deduction, Plaintiff cannot show that they were recklessly or willfully making improper deductions from Plaintiff's pay for food and lodging." [Def. Mem. in Supp. at 19].

While the Defendants would have a reasonable basis to believe that their sleep and mealtime policies comported with the FLSA and state law based on Mr.

Pechie's express approval, the Defendants have not established how they could have reasonably believed the amount they deducted from Plaintiff's wages comported with § 203(m). Mr. Williams's correspondence with Mr. Pechie does not address wage credits. Additionally, Plaintiff's earnings statements do not disclose that a food and lodging credit was taken by the Defendants from Plaintiff's regular-time wages or how the credit was calculated. Defendants' argument as to the food and lodging Plaintiff received misses the mark: in the absence of employer records of the actual cost of the food and lodging, the most the Defendants could have deducted as a credit against the minimum wage pursuant to U.S. DOL regulations was seven and a half times the federal minimum wage. 29 C.F.R. § 552.100(d) (7.5 × $7.25 per hour = $54.38 per week). Instead, Defendants took three times that amount in undisclosed food and lodging credits.

For illustrative purposes, beginning on January 1, 2017, the minimum wage in Connecticut was $10.10 per hour. *Hist. of Min. Wage Rates*, Conn. Dep't. of Labor, https://www.ctdol.state.ct.us/wgwkstnd/wage-hour/history.htm (reviewed Aug. 9, 2021). For the pay period of April 17, 2017 to April 30, 2017, Plaintiff worked 80 hours of regular time at a rate of $4.53 per hour and 88 hours of overtime at a rate of $15.15 per hour for gross pay of $1,695.60. [Pl. Ex. 3 (Earnings Statements) at 5]. This equates to 12 hours of paid work per day, seven days per week at Connecticut's minimum wage. Applying the maximum discretionary wage credit

that can be taken without documentation pursuant to 29 C.F.R. § 552.100(d), Plaintiff should have received $2,032.44.[4]

Defendants aver that Plaintiff's pay rate was set in accordance with guidance from the Connecticut Department of Social Services ("DSS") and the Connecticut Department of Labor ("CT DOL"). [Def. L. R. 56(a)(1) statement ¶ 31]. Considering the two primary agency guidance documents at issue potentially calls the veracity of Defendants' conclusions about the food and lodging credits into question.

Defendants point to their receipt of the U.S. Department of Labor's Field Assistance Bulletin 2015-1 from Ms. Kenefick, as evidence of the Defendants' compliance efforts. This offering is unavailing because Defendants did not have the Bulletin when it computed Plaintiff's wages. Defendants did not contact Ms. Kenefick until about a year after Plaintiff's employment with Defendants ended.

The DOL guidance document explains the record-keeping requirement and the alternative maximum default credit that can be claimed in the absence of an employer-maintained record of specific costs. [*Id.*]. Moreover, the guidance document further provides that:

> "[t]he Department's regulations require an employer to keep records showing section 3(m) additions to or deductions from wages if those additions or deductions affect the total cash wages owed. See 29 C.F.R. § 516.27(b). Specifically, if because of a section 3(m) credit, an employee receives less in cash wages than the minimum wage for each hour worked in the workweek, the employer 'shall maintain records showing on a workweek basis those additions to or deductions from wages'." [quoting See 29 C.F.R. § 516.27(b)]. An employer must also maintain such records if an

---

[4] Consider the following hypothetical bi-weekly wage computation:  80 hours regular time at $10.10 per hour, less $108.76 per 29 C.F.R. § 552.100(d), plus 88 hours overtime at $15.15 per hour.

employee is owed overtime in a workweek and the employer has taken a section 3(m) credit. *Id.*

U.S. Department of Labor's Field Assistance Bulletin 2015-1, at 3 ¶ 5.

Here, Defendants have not produced records demonstrating how they computed Plaintiff's wages.

For purposes of summary judgment, there is ambiguity regarding which DSS and CT DOL policies were considered and when they were considered in determining Plaintiff's pay rate. Defendants can establish that they complied with the DOL requirements for deducting sleep and meal breaks from Plaintiff's wages based on the parties' agreement. However, the same agency guidance documents that explain when sleep and mealtimes can be deducted also address under what conditions the employer may take a credit against the minimum wage for food and lodging. [Revised Joint DSS and CT DOL Guidance referring to the DOL Field Assistance Bulletin No. 2015-1]. It is conceivable that the Defendants looked to these policies for guidance as to reducing the amount of overtime liability that could be incurred during a live-in aide assignment, but Defendant has produced no evidence of its computations.

Compared to the issue of sleep time and meal breaks, the Defendants have not conclusively shown their noncompliance as to both the record keeping and the amount of food and lodging credits was not willful or done with reckless disregard. *See Kinkead*, 450 F. Supp. 3d at 190 (addressing the employers' burden for summary judgment as to claims for willfulness under the FLSA).

Accordingly, summary judgment as to whether any violation of the FLSA as to food and lodging credits was willful is DENIED.

The same follows for Defendants' good faith defense under Connecticut law. Conn. Gen. Stat. § 31–68(a) provides a remedy to an employee who has received less than the minimum fair wage, namely, recovery in a civil action of "(1) twice the full amount of such minimum wage or overtime wage less any amount actually paid to him or her by the employer, with costs and such reasonable attorneys' fees as may be allowed by the court, or (2) if the employer establishes that the employer had a good faith belief that the underpayment of such wages was in compliance with the law, the full amount of such minimum wage or overtime wage less any amount actually paid to him or her by the employer, with costs and such reasonable attorneys fees as may be allowed by the court."

Under the CMWA, the burden is on the employer to establish a good faith belief that their underpayment of minimum wages followed the law. Here, Defendants have not established why they would have believed that their methodology for claiming food and lodging credits, which resulted in the payment of cash wages less than the state minimum wage, complied with the law. Accordingly, the Defendants motion for partial summary judgment as to whether any violations of the Connecticut Minimum Wage Act resulting from improper food and lodging deductions was based on a good faith belief that Defendants' conduct was proper is DENIED.

## Conclusion

For the above stated reasons, Defendants' motion for partial summary judgment is GRANTED as to Plaintiff's claims for unpaid overtime wages under both the FLSA and the CMWA. Summary judgment is DENIED as to whether any minimum wage violation of the FLSA resulting from improper food and lodging wage deductions constitutes a willful violation of the FLSA. Additionally, the Court DENIES summary judgment as to whether the Defendants established a "good faith" defense to violation of the CMWA.

IT IS SO ORDERED

_____/s/_____

**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: August 9, 2021**